KURTZ v. KURTZ.

1. DIVORCE. *Parties campetent witnesses; Decree.*
   Husband and wife are competent witnesses in divorce cases, but a decree should never be granted upon the uncorroborated testimony of the parties.

2. SAME *Personal indignities, what are.*
   The ruling in *Rose* v. *Rose*, 9 *Ark.*, 507, that the personal indignities contemplated by the statute as grounds for divorce, include rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied neglect, intentional incivility, injury, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate, alienation and estrangement, is the settled construction of the Statute; but it goes to the very verge of safety, and should be cautiously applied, and pressed no further.

3. SAME. *Alimony; Lien.*
   Upon decreeing a divorce to a wife, alimony should be ordered only for the joint lives of the parties; and future payments should not be made a lien upon the husband's property.

4. SAME. *Alimony, subject to modification.*
   Decrees for continuing alimony are always subject to the modification of the Court upon a change of circumstances, upon the application of either party.

APPEAL from *Conway* Circuit Court in Chancery.
Hon. W. D. JACOWAY, Circuit Judge.

*Clark & Williams,* for appellant:

1. The court erred in ordering that execution should issue for future alimony. *Gantt's Dig.* secs. 2203, 2205, and that future alimony be a lien. *Ib.* secs. 3605; 2202. *Wilson* v. *Wilson,* 2 *Dev. & Bat. N. C.,* 377.

2. The alimony is excessive and double attorneys fees not authorized. *Bishop Mar. & Div.* secs. 604–5, 611–12–13.

3. It was error to decree alimony for the life of the wife. *Ib.* 592–6–7; *Sockridge* v. *Sockridge*, 3 *Dana*, 28; *Gantt's Dig. sec.* 2205.

4. The maltreatment charged was only words and over-work; no indignities to the "*person*" shown. *Lewis* v. *Lewis*, 5 *Mo.*, 278; *Gantt's Dig. sec.* 2155, *clause* 5; *Hooper* v. *Hooper*, 19 *Mo.*, 355; *Rowes* v. *Rowes, Ib.* 321; *Rose* v. *Rose*, 4 *Eng.* 507, 516; *Sheel* v. *Sheel*, 2 *Sneed*, 716. The indignities must be habitual.

*Ratcliffe & Fletcher*, for appellee.

1. No proof of adultery except testimony of appellant, which is not corroborated. 31 *Ark.*, 684; 33 *Ark.*, 259; *Ib.* 207; 34 *Ib.*, 37.

2. The grounds set up in cross bill sufficient, and fully proven. 1 *Bish. Mar. & Div.* (4 *Ed.*) sec. 726 *and notes* 2 *and* 3 *et seq.*; *Ib. sec.* 826; *Coble* v. *Coble*, 2 *Jones, Eq.*, (*N. C.*) 392; *Gale* v. *Gale*, 2 *Robertson*, 421; *Nogus* v. *Nogus*, 7 *Tex.*, 538; *Honnett* v. *Honnett*, 33 *Ark.*, 156, 161; *Rose* v. *Rose*, 9 *Ark.*, 507.

3. Alimony properly decreed. 2 *Bish. Mar. & Div.* (4 *Ed.*) sec. 481; *Musselman* v. *Musselman.* 44, *Ind.*, 106; and not excessive. 2 *Bish. Mar. & Div.*, (4 *Ed.*) secs. 462–3–4 *to* 484 *and* 512; *Turner* v. *Turner*, 44 *Ala.*, 437. It was properly for life of wife. *Wait* v. *Wait*, 4 *Const.*, 95; *Whitsill* v. *Mills*, 6 *Ind.*, 229; 23 *Ind.*, 71; *Lewis* v. *Sleator*, 2 *Green* (*Iowa*), 604; *McCrany* v. *McCrany*, 5 *Clarke* (*Iowa*), 232; *Burdick* v. *Briggs*, 11 *Wis.*, 126; 2 *Bish. on Mar. & Div* , (4 *Ed.*) sec. 706; 2 *Scribner on Dower*, 507—522; *Stewart* v. *Stewart*, 43 *Ga.*, 294; *Rose* v. *Rose, Sup.*

4. The alimony properly decreed a lien upon land of Kurtz, *Hill* v. *Mitchell*, 5 *Ark.*, 608; 7 *Ohio Rep.* (1 *pt.*)

161; *Olin* v. *Hungerford*, 10 *Ohio*, 269–70; *Fishli v. Fishli*, 2 *Litt.*, (*Ky.*) 337; *Sheafe* v. *Sheafe*, 3 *N. H.*, 155; *Blankenship* v. *Blankenship*, 19 *Kan.*, 159; *Holmes* v. *Holmes*, 29 *N. J., Eq.*, 9.

5. The allowance to attorneys reasonable. *Hecht v. Hecht*, 28 *Ark.*, 94–5.

EAKIN, J. The appellant, John Kurtz, sued his wife, Annie, for a divorce on the ground of adultery. She denied the charge in her answer, and on her part, filed a cross-bill for a divorce, on the ground of cruel and inhuman treatment on his part in requiring of her overwork; and also charging circumstances of gross and repeated insult, and studied coldness and contempt; amounting as she contends to such indignities to her person as to render her condition intolerable. Upon the hearing the Chancellor dismissed his bill, and granted the divorce upon her prayer, with an order for a semi-annual sum to be paid her as alimony, with her counsel fees incurred in the suit. Kurtz appealed with a supersedeas. Upon the application of appellee, she has been allowed, by this court, a small amount for the payment of her attorneys here, and also a small monthly sum for maintenance, during the pendency of the appeal, to be credited in case of affirmance upon the alimony decreed below. There has been a subsequent application to this court, on the part of appellant, to modify its allowance of alimony pending the suit, which motion has been reserved until the determination of the cause upon its merits. It is now submitted upon the whole case.

No question of law is involved in this decision. It would serve no useful purpose to detail the evidence, or set forth its substance. It has been carefully considered by the court, and we concur with the Chancellor in thinking that

15–38

the charges of the complaint are not sustained.    The testimony of the complainant himself, as to the adultery, is direct and positive, but we think is wholly without corroboration.    If it were struck from the record and all else admitted there would be nothing which, upon a fair construction, would impeach or tarnish the general character, which, it is otherwise proved, the lady sustains as a virtuous woman.

For her the cause of divorce is not so clear as want of it on the side of her husband.    There was no such cruelty as amounted to *saevitia* on his part—nothing directly endangering her person with bodily hurt.    Her health was bad, and she undertook, and was, perhaps, driven by her husband's want of care and consideration, to undertake and perform more household and farm work than she ought to have endured.    But on this point there was no such compulsion as, standing alone, could, with safety to society, be declared ground of divorce.

But the evidence does reveal a course of conduct on his part which we cannot doubt would render the life of any female, with average sensibilities, too intolerable for endurance.    He was afflicted with a jealousy of his wife, which is proven, in part, to have been groundless ; and which, in the absence of any proof to sustain his own testimony, we must suppose to have been wholly a delusion.    Under its influence he became cross, morose, and insulting.    His manner towards her was repeatedly and persistently unkind.    He withdrew from her all confidence, watched her movements secretly, and openly charged her, in coarse and disgusting language, with the grossest immoralities with divers persons at different times,    He did this not only in private, as a husband, believing it to be a fact, might and should do, to give opportunity for explanation, but did it in presence of others, and made it a matter of discussion with common laborers on the farm.    He persisted in declaring to her physician,

against his positive assurances, that his wife had a loath-some disease, contracted from illicit intercourse. He perse-cuted her with charges of adultery when she would be suf-fering and unable to reply; until at last, goaded to despera-tion, as it seems, she left his bed and refused to live longer with him as his wife.

It is to be remarked that a great deal of this depends, and must of necessity depend, upon her own testimony. The rules of evidence, as to parties, in divorce cases, render them competent to testify; but this court has heretofore announced that a divorce should never be granted upon the unsupported testimony of the parties alone. We think this rule has been well applied to the complaint of the husband. With regard to hers, it may be said, upon the other hand, that it *is* corroborated in many points, so far as facts of so private a nature between man and wife can be. We feel satisfied that so far as these insults and these indignities are concerned, her testimony is true.

Do they come within the statute which authorizes a divorce where either party "shall offer such indignities to the per-son of the other as shall render his or her condition intoler-able?" The question in each case is always a difficult and dangerous one, where there is no proof of actual bodily harm. It will not do to say that the quarrels and conten-tions of married life amongst people who lack refinement, even when accompanied by the grossest insults, may be always accepted as ground of divorce. The great and pre-dominant obligation of mutual forbearance and mutual for-giveness would soon sink from sight, and society would be delivered over to all the evils which civilized governments have anticipated in the loosenesss of the marriage tie. Those who assume those ties should do so gravely, and take each other not only "for better" but "for worse" also, if life be endurable in any tolerable shape. They should be driven

1 DIVORCE Parties competent witnesses, but no de-cree on their testi-mony alone.

2. ———: Personal indigni-ties; what are.

by necessity to conciliate each other rather than to aggravate dissensions with a hope of separation. Still there are limits of endurance which this court has recognized in the construction of this clause, and which fall short of *saevitia* in its ecclesiastical sense. The meaning of the "indignities to the person," too, has been extended beyond insulting gesture or touch.

A leading case on this question is that of *Rose* v. *Rose*, 9 *Ark.*, 507. In that case it was considered that the personal indignities contemplated by the statute included "rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied neglect, intentional incivility, injury, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate, alienation, and estrangement." The court, however, seemed to admit these with great circumspection and some reluctance, holding that to constitute grounds for divorce as creating the intolerable condition the statute had in view, they must be habitual, permanent, and continuous.

It must be confessed that this position goes to the very verge of safety, and should be pressed no further    In applying it the Chancellors should act with great caution to avoid the gradual approach, by imperceptible steps, to the practice of holding all matrimonial bickerings by which parties may render each other unhappy, to be valid grounds of divorce. Where there are no fixed and well defined barriers of principle it is difficult to limit the encroachment of precedents, setting in one direction. Each so nearly supports the next that before one is aware the bounds of reason are passed.

These expressions in *Rose* v. *Rose* have been adopted and followed in the case of *Honnett* v. *Honnett*, 33 *Ark.*, 156, under circumstances appealing strongly for its application, and it must now be considered the settled construction of the statute. Whether it has been wisely done must depend on the care and circumspection of the Chancellors.

In the case now in judgment the circumstances develop the existence of all the material elements conceded to be sufficient in the case of *Rose* v. *Rose*. We are not called upon to say what our decision might be, if it were a case of original jurisdiction. It is enough to say that there is enough in former decisions to support the finding of the Chancellor, and as there does not appear to have been any abuse of his authority or perversion of his judgment, we conclude to allow his decree to stand. The hatred of the husband seems as fixed as groundless; and the insults and and outrages upon her feelings and character have been repeated and continuous, with no reasonable probability of cessation.

The amount of alimony being $250 per annum besides counsel fees is not excessive, though large in comparison with appellant's estate. He seems to be a farmer in comfortable circumstances, with a large body of land, and a considerable amount of personal property, worth altogether from six to ten thousand dollars, The amount was in the sound discretion of the court, which does not appear to have been abused.

### ALIMONY.

Permanent alimony was decreed to appellee of $250 to be paid in 30 days, and a further semi-annual payment of $125 to be paid to the wife during her natural life, on the 1st days of January and July. The appellant was also ordered to pay the counsel fees, in sums designated. This alimony, and those fees were declared to be a lien on all the real estate of the appellant, and it was further ordered that upon failure of payment execution might issue.

According to the English Ecclesiastical practice, alimony was an incident to the pendency of a suit for a divorce, or a decree for a divorce *a mensa et thoro*. It was never given

Kurtz v. Kurtz.

in a decree *a vinculo*, for in such case it was held that no marital rights ever attached. It was indeed an incident of a continued marriage relation, and during separation was the substitute for the husband's support, which would have been rendered if they had been living together. It was always during their *joint* lives, or until reconciliation. At her death it was not necessary. At his, she, as wife, might claim dower. Meanwhile, it was always subject to modification by the court at any time, upon application showing change of circumstances sufficient to justify it.

Early in the history of our State, by the Revised Statutes (See *Gantt's Digest* 2195 *to* 2206), divorces *a vinculo* were allowed as well as divorces *a mensa et thoro*, in a great many cases, where, formerly, the latter alone were proper. In all these cases, as the Statute has been construed, the court was authorized to make any reasonable order as to the alimony of the wife, and the care of the children—being governed by the circumstances of the parties.

This introduction of alimony into decrees of divorce *a vinculo* was a novelty, and the reason of the old rules governing it, did not apply. As the matter is left to the reasonable discretion of the court upon the nature of the case (See *Gantt's Digest, sec.* 2204), it is entirely competent for this court to fix the rules to be observed by the Chancellors.

3. ALIMO-
NY:
Should
be only for
joint lives
of the par-
ties.
We do not think it a convenient practice to grant permanent alimony during the natural life of the wife. Without greatly embarrassing the settlement of estates upon the death of the husband, there are no apt means under our system of enforcing its payment. Until the legislature may otherwise provide, we think alimony should only be ordered during the joint lives of the parties, as has always been the rule in English cases.

A similar embarrassment, and perhaps greater inconvenience would be incurred by making future payments of alimony a lien upon real estate. This is too obvious for discussion. As for all sums ordered to be paid at once, and for which execution may issue, they are already general liens, without being so expressed.

*Future payments not liens on husband's estate.*

Decrees for alimony are always subject to modification on a change of circumstances, by the original court. This relieves us of the necessity of deciding upon the application made here for the purpose of modifying our order *pendente lite.* The purpose of that order is accomplished, and its effect ends with the decree rendered on this opinion.

4. ———: *Subject to modification.*

### DIRECTIONS FOR DECREE.

Let a decree be entered here, affirming so much of the decree below as grants a divorce to the appellee, and fixes the amount to be paid her, and the times, as also the amounts to be paid her attorneys, and in all other respects save as herein indicated. Modify the decree so as to make future alimony payable during their joint lives. Omit the clause making the future payments a lien upon the real estate of appellant.

Let the decree so modified be certified to the court below, to be there entered of record, and stand for enforcement, subject to any modification which the Chancellor may deem meet, on the application of either party.