WEAR *v.* BOYDSTONE.

5-1849                                    324 S. W. 2d 337

Opinion delivered May 18, 1959.

*Virgil Evans* and *H. B. Stubblefield,* for appellant.

*Sam Anderson, Holt, Park & Holt,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal is from an order of the Chancery Court which set aside three judgments, previously entered by that court, in the total amount of $6,900. The facts are as follows:

Appellant obtained a divorce from appellee on January 23, 1952, the decree awarding the sum of $250 per month as alimony for appellant and maintenance for a minor child. On September 19th of the same year, appellant married Darrel Wear. Approximately one month later (October 22nd), Boydstone filed a motion to set aside and revise the order for alimony and maintenance payments because of the fact that appellant had remarried. This motion was never acted upon by the court. Appellee had moved to California, and appellant instituted proceedings in Kern County in the Superior Court of the State of California, against Boydstone under the Uniform Reciprocal Support Act. The California court found that appellant had remarried, and was not in need, and directed appellee to pay the sum of $50 per month to the Clerk of the Garland Chancery Court for the support and maintenance of the minor child. A certified copy of this order was filed with the proceedings in the Garland County Chancery case. Thereafter, appellant obtained three judgments against appellee, as follows: (a) On July 22, 1953, a judgment for alimony and maintenance arrearage in the sum of $2,000. (b) On April 13, 1954, a judgment was obtained for alimony and maintenance arrearage in the sum of $1,700. (c) On August 30, 1955, judgment against appellee was obtained for alimony and maintenance arrearage in the sum of $3,200. Prior to obtaining the first two judgments, appellee was sent, on each occasion, a copy of the motion

for judgment and a notice of the hearing, by registered mail, addressed to him at Bakersfield, California, and prior to obtaining the third judgment, a copy of the motion and notice of hearing was personally served on appellee by the marshal of Bakersfield. On February 21, 1956, Boydstone filed a motion to set aside the judgments for alimony and asked the court to reconsider child support payments, it being alleged that the minor child had enlisted in military service, and was thereafter self-supporting; further, that the minor child became 21 years of age on September 7, 1955. Hearing was held on May 4, 1956, no oral testimony being taken, and counsel argued the case orally. Subsequently, memorandum briefs were submitted, and on October 1, 1958, the court entered an order finding, *inter alia,*

"That the allowance for alimony and child maintenance was not an award of a gross sum payable in installments, or in lieu of, or was a substitute for Plaintiff's property rights.

That pursuant to the divorce decree the Defendant has paid specified alimony and child support in the amount of $250 per month from the date of the divorce until February, 1953, at which time the Defendant made no further payments.

That the Plaintiff, Dorothea B. Boydstone (Wear), on September 24, 1952, remarried J. Darrel Wear.

That the Defendant, Joseph O. Boydstone, Sr., is not in arrearage in the payment of specified alimony and child support as of the date Plaintiff remarried.

That the remarriage of Dorothea B. Boydstone (Wear) to J. Darrel Wear, on September 24, 1952, automatically terminated her right to alimony upon such remarriage.

That the judgments and decrees of this Court made and entered on July 28, 1953, in the amount of $2,000.00; April 13, 1954, in the amount of $1,700.00; and August 30, 1955, in the amount of $3,200.00 were judgments for alimony accruing after the remarriage of the Plaintiff

and are void and without authority due to the automatic termination of alimony upon such remarriage.  *  *  *''

As to child support, the court found that Boydstone had paid appellant the sum of $1,600 under void orders and judgments issued subsequent to her remarriage; together with the sum of $50 a month from January, 1953, through September, 1955, and further found that the child had received a satisfactory amount for child support. The court then set aside the three judgments and discharged Boydstone from any further obligation for support and maintenance of the child.  On December 12, appellant filed objections to the order, citing various reasons.[1]

Four points are relied upon for reversal, but we see no need to discuss these individually, and under the view we take, a discussion of all is unnecessary to reach a conclusion.

The three judgments entered by the court were not void judgments.  In *Jones* v. *Jones,* 204 Ark. 654, 163 S. W. 2d 528, this Court said:

"In order to collect on such a continuing general decree, it would be necessary to ascertain from time to time the amount of arrearages due in the payment of alimony and render a decree for the specific amount due.  For these purposes the parties to the suit continue to be parties and, being parties already, it would not be necessary to get personal service upon them to carry out and enforce a continuing decree when an attempt is made to reduce the decree to a definite and certain amount, *  *  *''.

The record also reflects that Boydstone received notice on each occasion that the judgment would be applied for, but never appeared or otherwise contested the motions seeking to reduce the arrearages to judgment.

Appellee, though admittedly unable to cite an Arkansas case directly holding that alimony payments cease *automatically* upon the remarriage of the wife, apparently feels that we should take such a view.  We have

---

[1] It is not essential, in determining this litigation, to set forth the allegations in the motion.

no quarrel with the statement that alimony payments should cease upon the divorced wife's remarriage, for we see no logic in requiring a first husband to contribute at regular intervals to an ex-wife whose care and maintenance has been assumed by a second husband. We have held on several occasions that the remarriage of the wife is sufficient grounds to entitle the husband to a termination of the alimony payments — *on making proper application to the court granting the original decree. Casteel* v. *Casteel,* 38 Ark. 477, *Erwin* v. *Erwin,* 179 Ark. 192, 14 S. W. 2d 1100. This is in line with the general rule, stated in *Corpus Juris Secundum,* Volume 27, Section 239 (c), page 994:

"Although there is contrary authority, in the absence of a mandatory statute to the contrary, a divorced wife's remarriage to another does not necessarily of itself operate as a release of the former husband's obligation to pay alimony. It does, however, afford a cogent reason for the court to modify or vacate the order, * * *."

Appellant points out that the trial court lacked power to vacate its decrees rendered and entered at prior terms, unless and until the appellee complied with the provisions of Section 29-506, Ark. Stats. (1947) Anno. We are in full accord with this contention. The said section sets out eight grounds, any one of which, if established, would authorize a trial court to vacate or modify a judgment entered at a prior term. Admittedly, none of these grounds were set out in the motion filed by appellee asking that the judgments be set aside. We have many times held that courts lose jurisdiction of judgments and decrees with lapse of the term in which they were rendered, and they can thereafter only be set aside by establishing one of the grounds mentioned in the statute previously cited. *Coulter* v. *Martin,* 201 Ark. 21, 139 S. W. 2d 688. *Hill* v. *Teague,* 194 Ark. 552, 108 S. W. 2d 889. A multitude of Arkansas cases are to the same effect. The only authority that appellee cites is to the effect that the court may set aside void judgments — but, as herein pointed out, these judgments were not

void. It is therefore apparent, without discussing other alleged errors, that the decree must be reversed.

However, we consider that there are unusual and unexplained circumstances in this case, which, by every principle of equity, require further development. In the first place, the record clearly discloses that Boydstone, on October 15, 1952 (less than a month after appellant's remarriage), filed a motion stating:

"* * * he is informed that the plaintiff, Dorothea Boydstone, has remarried and that her name is now Dorothea Wear. Defendant requested of the plaintiff through her attorneys that he be given information as to her marital status and as to the status and requirements of the boy, James B. Boydstone, for whom the original decree makes provisions. The plaintiff has not as yet responded to the request for information, * * *,"

and asked that appellant be required to appear and state to the court her marital status, and if it should develop that she had remarried,

"* * * then the defendant moves the court that the order for alimony and child maintenance heretofore granted be set aside and that the same be revised in accordance with conditions existing today; * * *".

As already pointed out, this motion, for some reason, was never acted upon. The docket sheet reflects that appellee's then counsel was permitted to withdraw from the case on December 2, 1952.

Of course, there is nothing in the record to indicate the evidence before the court at the time the various judgments were rendered, or whether appellant's remarriage was shown by the testimony. The fact that the Chancellor held these judgments void is a clear indication that he did not know of the remarriage at the time the judgments were entered.

Mrs. Wear invoked the aid of a California court, where an order was entered (January 2, 1953) finding that she had remarried, and refusing to allow alimony or

support to her; the order provided that $50 per month should be paid for the maintenance of the minor child. Subsequent to this order, all three judgments were obtained. The record reflects that appellee complied with the provisions of the California decree, the April, 1954, judgment reciting that "there is now held by the Clerk of this Court the sum of Eight Hundred Dollars ($800.00) which, pursuant to the orders and directions of this Court, is paid to plaintiff in open Court to apply on said delinquencies totaling Two Thousand Five Hundred Dollars * * *", and the August, 1955, judgment for $3,200 reciting "$4,000 less $800 paid and credited thereon."

The first two notices to Boydstone (prior to the July, 1953, and April, 1954, judgments) were sent to him c/o Kern General Hospital, Bakersfield, California, and the decrees reducing the delinquent alimony to judgment, make such a finding. Counsel for each litigant, in the statement of the case, refer to appellee as "Dr." Boydstone, though this appellation does not appear in the various pleadings. One might surmise that appellee is a physician (though the title is held by numerous others), and was on the staff at Kern Hospital; however, it is possible that he was a patient at the hospital.

While ordinarily, Chancery cases are decided upon the record before us, we have, on several occasions, remanded where it appeared that in the interest of justice, the cause should be more fully developed. *Carlile* v. *Corrigan,* 83 Ark. 136, 103 S. W. 620. The record leaves unanswered possible pertinent questions, and we feel that in view of these uncommon facts, appellee should be given the opportunity to assert any possible meritorious defense, in accordance with the provisions of Section 29-506 and Section 29-508.

The order is accordingly reversed, and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.