ARK. STATE HIGHWAY COMM. *v.* ELLIOTT.

5-2563                              353 S. W. 2d 526

Opinion delivered February 12, 1962.

*Dowell Anders* and *H. Clay Robinson,* for appellant.

*Floyd Sharp* and *Cooper Jacoway,* for appellee.

CARLETON HARRIS, Chief Justice. The Arkansas State Highway Commission, appellant herein, filed an eminent domain action in the Pulaski County Circuit Court against certain land located in Pulaski County, for the purpose of acquiring right-of-way needed for

Interstate Highway No. 40. Since an issue as to the ownership of the property was raised, the cause was transferred to the Pulaski County Chancery Court, where ownership of the land, consisting of one-half block in the Sandefur and Waters Addition to the city of North Little Rock, was resolved in favor of Catherine Elliott, appellee herein. The case between the Department and Mrs. Elliott then proceeded to trial on the sole question of compensation due Mrs. Elliott for the property which had been taken. At the conclusion of the testimony, the Pulaski Chancery Court entered a decree finding that Mrs. Elliott should have judgment in the amount of $5,000, plus interest on the amount of $2,875, at the rate of six per cent (6%) per annum from July 24, 1959, until paid.[1] From this decree, appellant brings this appeal. It is asserted by the Highway Department that there was no admissible evidence presented to support a larger judgment than $2,125, and the Court's finding that Mrs. Elliott was due $5,000 is against the preponderance of the evidence.

The central argument in the brief relates to the evidence of Jimmy Green, owner of the North Little Rock House Wrecking Company. Mr. Green testified that he had been buying, selling, and moving houses for approximately ten years. He stated that he had been familiar with the Elliott property for several years, and that in 1957, he had viewed the property with the thought of purchasing it. The witness testified that he made an offer to purchase same in the amount of $5,000. His letter, dated March 11, 1957, and directed to Mrs. Elliott, was offered in evidence over the objections of appellant. The letter advised appellee as follows:

"As you know, I would like to have the whole block. I have now acquired two very good houses, one a five room and the other a six room house, and of course, I have to move both, and since you have been to quite a bit of expense moving the old house from this property

---

[1]The Commission had filed the suit and its Declaration of Taking on July 24, 1959, and had deposited the sum of $2,125 as estimated just compensation for the property.

and having the land leveled and partially landscaped, I will make you one more offer as follows: I will pay you $5,000.00 for the entire half block, $2,000.00 in cash and the balance of $3,000.00 at so much per month to be agreed on at time of sale.

If this offer is acceptable to you will you please let me know by return mail, or telephone, as I only have 30 days in which to find a location and move these houses.'' Green testified there was no improvement on the land at the time he made the offer, and that he contemplated placing four houses on the property, which would be re-sold. He also testified that he knew there was gravel on the property, and that he could see outcroppings close to the surface. Green stated that he owned dump trucks and loading machines, and could obtain around $15 for a load of gravel (about five yards to a load); that it would cost him about $1.00 to load the gravel, and no more than $2 or $3 to haul the load, since he contemplated short hauls to improvements being built in the community. The witness did not estimate the amount of gravel that could be obtained, other than to indicate there was enough to prevent his losing any money on the $5,000 purchase price. ''There's lots of building going on right in that vicinity. Within a mile, mile and a half, and with my dump truck and loading machines, it's close to my office and all, I could haul gravel. I mean where there is building going on there's always a sale for gravel.'' Appellant objected to all of this testimony as improper in reaching the fair market value of the land in litigation. When asked the highest and best use for the property before the condemnation, Green replied:

''To my honest opinion, either way. It is awful good as close in to town as that is, close to Lakewood, as far as putting housing in there. To my opinion, the city is growing out and it would be a fine location for houses or either if it was enough demand there a man could start cutting gravel there.''

Subsequently, he stated that the highest and best use would be for homesites.

We are definitely of the opinion that the Court erred in admitting the letter. This is really a case of first impression. In only one Arkansas case, *Jonesboro, Lake City & Eastern Railroad Co.* v. *Ashabranner,* 117 Ark. 317, 174 S. W. 548, has this type of evidence been mentioned, and a determination of the admissibility of same being unnecessary to a determination of that lawsuit, the Court passed over the question, saying:

"It is unnecessary for us to enter into any discussion of the law as to when or under what circumstances proof of offers to purchase land at stated prices may, if at all, be considered in estimating value, but it must be conceded that an isolated statement of a witness as to an offer without showing under what circumstances the offer was made, is not of itself competent testimony to establish value."

The great weight of authority is to the effect that such evidence is inadmissible. In 7 ALR 2d 785, we find:

"In by far the greater number of the cases, particular evidence showing that a purchase offer of a certain amount has been made or received for the real property in question, or for a similar parcel of property, has been considered to be inadmissible upon the issue of the market value of the property in question. While the rulings have varied somewhat as to the grounds for the exclusion of such evidence, and sometimes have been affected by the particular method by which the offer was shown or sought to be shown, the rather general import of this group of cases is that ordinarily an unaccepted offer for the purchase of real property is not admissible as evidence of the market value of such real property."

A number of cases are cited supporting the majority view, including cases wherein the testimony relative to the offer of purchase was given by the person who actually made the offer. There are a few states which admit this evidence to some extent, primarily Illinois,

but even there, the admission of the evidence is somewhat limited. The rule in that state under which offers to purchase may be introduced is succinctly set forth in the case of *City of Chicago* v. *Harrison-Halsted Building Corporation,* 143 N. E. 2d 40.

"The offer must be made in good faith, by a man of good judgment, acquainted with the value of the real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy. Private offers can be multiplied to any extent, for the purpose of the cause, and the bad faith in which they were made would be difficult to prove. The reception of this kind of evidence stands upon an entirely different footing from evidence of actual sales between individuals or by public auction. * * * The burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was *bona fide,* for cash, and made by a person able to comply with the offer if it were accepted. The offer sought to be introduced shows on its face that it was not for cash as required by the rule but for partly cash and the balance payable in monthly terms. The trial court did not abuse its discretion in excluding this evidence from the jury."
It is apparent that even under the Illinois rule, Green's offer to purchase would not be admissible. In the first place, it was not a cash offer, but rather, involved only the payment of $2,000 in cash, with the balance of $3,000 to be paid in monthly payments. It also appears that Green's offer was based on a particular need that would not be applicable to the average buyer. At any rate, we hold that the evidence of an offer to purchase is not admissible to establish the fair market value of particular property.

But, says appellee, even excluding the letter, and Green's testimony relative to the purchase offer, the

testimony is still sufficient to justify the amount awarded in the judgment. It is contended that Green, as a qualified lay witness justified his appraisal; that his testimony established the property was worth $5,000, either for homesites or because of the value of the gravel. We do not agree. Green did not claim to have knowledge of the fair market value of real estate in the neighborhood of the Elliott property. He had not bought nor sold property in the area, and he apparently was not familiar with prior sales. He, of course, did not live in the community, and his knowledge of the property seemed to be confined to passing it each day, along with a casual examination of the soil. In *Housing Authority of Little Rock, Arkansas* v. *Winston,* 226 Ark. 1037, 295 S. W. 2d 621, lay testimony was admitted where the witnesses stated they were acquainted with the general market value of the property in the area, and explained the basis for their opinions. In numerous other cases, qualified laymen have been permitted to give their opinions, but Green's knowledge of the area does not appear to meet the established requirements of a qualified lay witness, and his testimony does not meet the test. As to his evidence in regard to the gravel, it, too, falls short in reaching the market value of the property. Kenneth Schuck, a consultant civil engineer, testifying on behalf of appellee, estimated that the property contained 30,000 yards of gravel that would be desirable in the construction industry; he stated that this gravel was comparable to gravel for which a prior employer of the witness had paid 15 cents per cubic yard.

There is no competent evidence in the record relating to the value of the land for gravel development. The rule is well established that one cannot take the yardage of mineral deposits in property, multiply it by unit price, and thereby arrive at the market value of a tract, in an eminent domain action. In *Nichols on Eminent Domain* (Third Edition), Vol. 4, § 13.22, p. 243, we find:

"The rule is widely prevalent in this country that the existence of mineral deposits in or on land is an

element to be considered in determining the market value of such land. Also as in the case of vegetable growths, the rule has been correlatively stated that the value of such mineral deposits cannot be separately determined independently of the land of which it is a part. It cannot be considered as so much potential merchandise to be evaluated as such. The land taken must be valued as land with the factor of mineral deposits given due consideration. In determining the just compensation to be paid to the owner it is not permissible to aggregate the value of the land and the value of the deposit. Thus, the value of land as stone land suitable for quarrying—but not the value of the stone separate from the land—is a proper subject of consideration both by the witnesses and the jury in fixing the amount of just compensation to be awarded.''

As was stated in *Arkansas State Highway Commission* v. *Cochran*, 230 Ark. 881, 327 S. W. 2d 733, ''As a general rule, the market value of a tract of land cannot be determined simply by estimating the amount of stone or other mineral it contains and then multiplying that estimate by a fixed price per unit.''

The Highway Commission offered the testimony of Walker Watson, real estate appraiser, and Zack Mashburn, appraiser for the Commission, who had appraised the Elliott property. Each of these witnesses testified that the highest and best use of the property was for residential purposes, and, based on comparable sales, the condition of the sub-division, and the possible subdivision development in the area, Watson stated the fair market value of the property, prior to the date of taking, was $2,125. Mashburn gave the figure of $2,000. Russell Newsom, civil engineer in the materials and tests division of the Arkansas State Highway Department, testified that he had viewed the property, and the gravel referred to was ''clay gravel'' rather than ''sand gravel'', and was not select material. He stated that the Highway Department would not use this type of gravel in highway construction, because it was below the required grade.

The witness further testified that it had no special value for other commercial purposes, though he admitted it could possibly be utilized in some undertakings. He also stated that he had never made a test on this particular property, and his acquaintance with it was limited to visual examination. In reply to the question on cross-examination, "So by test you don't know whether this meets the standards or not?", Newsom replied, "Not positively, but I'm willing to stick my neck out and say it would not."

We do not feel that the proof in this case has been developed to the extent that we can really determine whether the amount awarded in the judgment was proper for the taking of the property. Of course, a land owner is entitled to be paid for the market value of his property in its highest and best use, but we are unable to ascertain from this record the highest and best use that could have been made of the Elliott land before the taking by the Department, *i.e.*, we cannot determine whether it was more valuable for residential purposes or as a source of commercial gravel. The Department presented two witnesses who gave their opinions as to the value of the property for residential purposes. Watson stated that he found six or seven sales in the addition, but described only two; Mashburn mentioned three sales, but testified to only one, and this was one of the two described by Watson. The Department presented no testimony in regard to the value of the lands as a gravel source, and as shown by the quoted testimony of Mr. Newsom, made no tests whatsoever. Appellee's testimony was insufficient in both respects. While normally, we determine chancery cases on the record before us, this Court will occasionally remand a case for further development. As stated in *Wear v. Boydstone,* 230 Ark. 580, 324 S. W. 2d 337:

"While ordinarily, Chancery cases are decided upon the record before us, we have, on several occasions, remanded where it appeared that in the interest of justice, the cause should be more fully developed. *Car-*

*lile* v. *Corrigan,* 83 Ark. 136, 103 S. W. 620. The record leaves unanswered possible pertinent questions, * * *.",

See also *Mabrey* v. *Millman,* 208 Ark. 289, 186 S. W. 2d 28, and *Hymes* v. *Bickford,* 208 Ark. 688, 187 S. W. 2d 542, where we reversed, and remanded for the purpose of permitting the proof to be more fully developed in the trial court.

Accordingly, the decree is reversed, and the cause remanded with directions to permit both appellant and appellee to offer further proof of the market value of the property here in litigation, relative to its highest and best use.

It is so ordered.

JOHNSON, J., dissents; BOHLINGER, J., not participating.