ARKANSAS STATE HIGHWAY COMM'N *v.*
MACKIE L. TAYLOR AND VERNIE TAYLOR

5-5048                                    447 S. W. 2d 646

Opinion delivered December 8, 1969

*Thomas B. Keys* and *George O. Green,* for appellant.

*Gordon, Gordon & Eddy,* for appellees.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case. The Arkansas State Highway Commission, appellant herein, instituted an eminent domain action against Mackie L. Taylor, and his wife, Vernie Taylor, for the acquisition of lands needed for the construction of Interstate 40 and its facilities in Conway County. The property condemned consisted of 2.75 acres taken from a 3.1 acre parcel. The property had frontage of 343 feet on Highway 9, and a depth of 390 feet. The property remaining consisted of approximately one-third of an acre in a triangular shape, the condemnation taking all access to this area, and for all practical purposes leaving this last property landlocked. On trial, Mr. Taylor testified that his damages were $27,975.00.

Lloyd Pearce, an expert appraisal witness on behalf of appellees, testified to damages of $19,100.00, and Mr. Charles Lewis Ormond, also an expert appraiser for appellees, testified that the damages amounted to $23,-950.00. The jury returned a verdict of $23,500.00, and from the judgment so entered, appellant brings this appeal. For reversal, it is urged that the trial court erred in refusing to strike the value testimony of Mr. Taylor, and also erred in refusing to strike the value testimony of Mr. Pearce.

The commission recognizes that Mr. Taylor, as an owner of the land, was entitled to give his opinion of the value thereof. It points out, however, citing *Arkansas State Highway Commission* v. *Darr,* 246 Ark. 201, S. W. 2d 463, that an owner's conclusion as to damages must be satisfactorily explained; if not, the testimony does not constitute substantial evidence. It might be well at the outset to point out that Mrs. Darr's testimony in that case, and Mr. Taylor's testimony in the instant

litigation, can hardly be compared. In *Darr*, we mentioned that it was not disclosed when she resided on the land, if ever; that she was never asked if she had an opinion as to the fair market value of the property, but was merely asked the worth of the land; that it was apparent that she had a sentimental attachment for the farm, because her husband had told her to keep it, and further, she showed no reasonable knowledge of market values of lands in the community. Here, Mr. Taylor bought the property in 1957, finished a house that was being constructed, and lived on the property for more than 10 years. He appeared to be familiar with the location of the highways, utilities, easements, and city limits, with reference to the property and the surrounding area. All improvements were taken by the commission; in fact, as already pointed out, everything was taken except the approximate .3 of an acre, which was valued at $25 by Taylor, and $50 by Pearce, Ormond, and the appraisers for the state. The Taylor home was a one-story building, 28 x 38 feet, with five rooms, modern bathroom, and hot water heater in the bath. There was a septic tank, and a deep well with a pump in it, a glass screened-in porch and a picture window in the front of the house. There was quite a bit of shrubbery on the premises. A trade school was located about ¼ of a mile from the home. Admittedly, two sales that he mentioned were much lower than the value he placed on his own lands, but he endeavored to show that the condemned property had advantages not found with the land that had been sold. Appellant's principal argument for striking the value testimony relates to the assertion that Taylor considered offers that had been made to him to purchase his land, or parts of it, in reaching his conclusions. On direct examination, appellee was asked if his opinion was based on what other land was selling for, and offers he had had for it, and the witness stated that both his before the taking value and after the taking value were based on what other property was selling for. However, the commission moved to strike his value testimony previously because he had said that he

considered offers that had been made to him. The court denied this motion, but told the jury:

"Ladies and gentlemen of the jury, this witness has testified with reference to offers that people had made him regarding his property. You are now told by the Court that an offer for this property is not proper and should not be considered by you at all."

Appellee contended that the testimony was admissible as a means of showing that the property was desirable, though he agreed that the amount of any offer could not be given. Appellant relies upon *Arkansas State Highway* v. *Elliott*, 234 Ark. 619, 353 S. W. 2d 526, and *Arkansas State Highway Commission* v. *Jackson County Gin Company*, 236 Ark. 761, 376 S. W. 2d 553. In these two cases the amounts of the offers were given by the witnesses. In *Elliott*, a witness was brought into court by Mrs. Elliott, this witness testifying that he had offered to purchase the condemned property for $5,000.00, and a letter written sometime before (the filing of the suit) from the witness to Mrs. Elliott, was offered in evidence. The letter advised that he would pay her $5,000.00. We held that this was not admissible, and reversed the judgment. In the Jackson County Gin Company case, there was testimony that the sales price of certain property between individuals had been reduced by $10,000.00, because the highway department had filed a condemnation action. In the case before us, no figure was ever mentioned, but there is no need to discuss appellee's contention, since the court very plainly told the jury that it should not consider this testimony. There was no error in refusing to strike the evidence of appellee Taylor.

As to the second point, we also disagree with appellant that the value testimony of Lloyd Pearce should be stricken. This contention is based on the fact that Mr. Pearce gave this particular property a much higher value per acre than the sale price obtained per acre for

the comparable sales mentioned by the witness. Pearce said that the highest and best use of the north 100 feet of the Taylor property, where the home was located, was for a rural homesite, and that the best use for the south 243 feet was for commercial property. The latter portion is right across the highway from property that is zoned for commercial use. He agreed with other witnesses that the landlocked triangle, heretofore mentioned, was practically worthless, valuing it at $50.00. In using comparable sales, Pearce stated that he considered several factors, such as location, the availability of utilities for servicing the property, access to and from the area, access to the city of Morrilton, proximity to schools and churches, and the topography of the lands. It is true that he gave a higher value to the Taylor property, both for residential and commercial use, than had been received by the seller in the comparable sales used, but the witness explained his reasons for doing so, which were based upon the factors just mentioned. For instance, one sale used in comparison of residential use, was on a gravel road; another had frontage on Highway 9, but there was a large capital outlay expended in order to bring utilities to the property. Another sale made in the same vicinity did not have water and sewer available. According to the evidence, sewer and water were less than a half mile from the Taylor property. Pearce said that one of the factors affecting the value of property around Morrilton is that the land is tightly and closely held; that there is not a lot of property for sale in the area. He explained that the city is expanding to the north, expansion to the south being limited by the Arkansas River, and expansion to the west being limited by Point Remove Creek and overflow lands in the general area. Expansion of Morrilton would therefore normally take place to the north and the east. As to topography, the land is level, cleared, and could be easily developed. Both of the appraisers for the state gave the highest and best use of all the property as residential, although Mr. J. C. Merritt admitted that property

across the highway (west of the Taylor property) was zoned commercial.[1]

It must be remembered that, though we have held that a non-expert witness must state the facts upon which his opinion is based before giving that opinion, there is no similar condition attached to the admissibility of an expert's opinion, provided, of course, that the expert demonstrates his familiarity with the subject of his evidence. *Arkansas State Highway Commission* v.

---

[1]From the cross examination of Merritt:

"Q. I am talking about the Leavels to Leisure Lodge in 1962, with frontage on Highway 9, $10,000.00 for an acre and a quarter, approximately $8,000.00 an acre in 1962.

A. I believe you will find that in a more dense built up residential and commercial area than subject property. I do have market data on that, yes, sir, but just because it is the same distance from Morrilton as subject property is—

Q. You didn't consider that at all in trying to fix the fair market value of this property?

A. I considered it to be very excessive to the value of this property. To me it is ridiculous to try to use that sale. First of all, I think it is a different highest and best use.

Q. Where is the cotton gin?

A. Pardon?

Q. You say this is a more desirable location where the cotton gin is located with reference to the Leavels property that sold to Leisure Lodge?

A. It is in that area.

Q. Isn't there a little grocery store across the street from the property?

A. Yes, sir.

Q. Isn't there a drive-in theater next to it?

A. If you are speaking of that sale—This is in a built up commercial and residential area, and consequently would have much greater value.

Q. Isn't the area across the highway from the Taylor property commercial?

A. There will be. There has been special purpose back from the highway.

Q. I am talking about the west of the Taylor property at the Hawkins addition. Isn't that zoned commercial?

A. I understand it is, since the highway was put there.

Q. Wasn't it zoned commercial prior to that time?

A. Yes. People have a little forethought and look to the future."

*Johns,* 236 Ark. 585, 367 S. W. 2d 436. The very fact that the witness is an expert (and Pearce's qualifications are not questioned) permits him to express an opinion, though the sales mentioned are not comparable in every respect to the property under discussion. The court did not err in refusing to strike the testimony of Pearce.

The testimony of appellees' other expert witness, Charles Lewis Ormond, is not under attack, and it would accordingly have to be presumed that there was no question as to the basis used for the before and after values given by this witness. The appraisal of Ormond was considerably higher than that of Pearce; in fact, it would really appear that the jury was more impressed by this witness than any other, since the verdict arrived at was much nearer to the figure given by Ormond than the figure given by either Taylor or Pearce. Ormond, who according to his evidence, sold an average of two pieces of property a month in and around Morrilton, testified that there was a good demand for property of the Taylor type, and he was definitely of the opinion that this land could have a greater demand as commercial property, rather than for any other use. Not a single objection was made to any part of Ormond's testimony.

Finding no reversible error, the judgment is affirmed.

It is so ordered.