Howard M. ARMSTRONG v. Mary Nelle ARMSTRONG

5-5264 · 454 S. W. 2d 660

Opinion delivered June 1, 1970
[Rehearing denied June 29, 1970.]

*Carpenter, Finch & McArthur,* for appellant.

*W. J. Walker,* for appellee.

Carleton Harris, Chief Justice. On November 14, 1967, the Pulaski County Chancery Court, First Division, entered a decree granting an absolute divorce to Mary Nelle Armstrong, appellee herein, from appellant, Howard M. Armstrong. Incorporated into the decree and made a part thereof was a written agreement between the parties entered into on November 13, 1967, whereby appellant and appellee agreed in full upon a property settlement. Thereafter, Mrs. Armstrong filed a motion asserting that appellant was delinquent in child support and alimony payments and subsequently she sought judgment for the arrearage and asked that appellant be cited for contempt. Subsequently, Dr. Armstrong filed a petition seeking a reduction in the payment "of any and all sums" to appellee, alleging that he had been ill, unable to perform surgical operations, and accordingly his income had been drastically reduced and he was entitled to a reduction in the pay-

ment of alimony, support, and maintenance to appellee. On July 2, 1969, the court found that Armstrong was in arrears in his alimony in the sum of $3,843.82, and judgment in that amount was given Mrs. Armstrong, as well as an attorney's fee for her attorney. Notice of appeal of this judgment was given by appellant. On August 29, 1969, a Special Chancellor entered a decree finding that in addition to previous judgments, Armstrong was in arrears in payments of alimony due Mrs. Armstrong in the sum of $2,085.00, and judgment was given her for that amount as well as an additional judgment for $500.00 due Mrs. Armstrong for repayment of a debt, together with attorney's fee. The court also found that:

"The agreement between the parties incorporated in the decree is contractual and the payments thereunder due the plaintiff are not subject to reduction by the court."

In accordance with this finding, appellant's petition for reduction in alimony payments was denied. From this decree, appellant appeals and the two decrees have been consolidated for appeal purposes. For reversal, it is simply asserted that the chancery court erred in denying reductions in alimony payments, and that its finding that the chancery court lacks power to alter alimony amounts agreed upon by parties in a decree of divorce, is erroneous.

We do not agree that the Court committed error, and it might be said that if appellant's position were upheld, there would hardly be any use in parties entering into an independent settlement contract in contemplation of divorce. Both parties agree that if the contract merged with the decree, the court has authority to alter alimony payments, and they likewise agree that if the contract constitutes a separate and independent agreement, the court does not have the authority to change it. Appellant argues that the language in paragraph "1" of the court's order sustains his position. The language referred to is as follows:

"That the agreement made and entered into on the 13th day of November, 1967 which instrument is fully set forth above, constitutes a fair, equitable and binding agreement upon the parties, and that the same should be, and it hereby is, approved and confirmed and is made a part of the decree of this Court and is hereby given the same force and effect as if its set forth herein. The terms and provisions of said contract may be enforced by the further orders of the court in the same manner and to like effect as are the judgments and decrees of the Court."

We do not agree that the fact the agreement is "made a part of the decree of this Court" adds any weight to appellant's position, nor does the fact that the agreement recites that the terms and provisions of the contract may be enforced by orders of the court in the same manner and to like effect as are the judgments and decrees of the court, strengthen the argument.

In *Bachus* v. *Bachus*, 216 Ark. 802, 227 S. W. 2d, 439, the parties had entered into a written agreement by which they settled all property rights and agreed that the wife would receive $200.00 per month as alimony, and support for the couple's four children. The Chancellor approved the contract and it was incorporated into the divorce decree. Subsequently, the court entered an order changing the amount Mrs. Bachus would receive as set out by the contract, from $200.00 per month to $150.00 per month. She appealed. In reversing the trial court, we said:

"The court erred in reducing the amount of the monthly payments. The parties to a divorce action may agree upon the alimony or maintenance to be paid. Although the court is not bound by the litigants' contract, nevertheless if the court approves the settlement and awards support money upon that basis there is then no power to modify the decree at a later date. * * * If changed circumstances should subsequently render the payments inequitable the court may decline to enforce by contempt proceedings the payment of a

greater sum than the circumstances warrant, thereby remitting the plaintiff to her remedy at law to collect the balance due under the contract."

Here too, the court might well have punished appellant for contempt if it had found that he was in willful violation of its decree, but as stated in *Bachus,* the court does not· have to enforce the provisions of a decree through contempt proceedings. Of course, one of the purposes, of incorporating an agreement that is independently entered into, is to be able to enforce its provisions through contempt proceedings.

In *Seaton v. Seaton,* 221 Ark. 778, 255 S. W. 2d, 954, this Court said:

Our decisions have recognized two different types of agreement for the payment of alimony. One is an independent contract, usually in writing, by which the husband, in contemplation of the divorce, binds himself to pay a fixed amount or fixed installments for his wife's support. Even though such a contract is approved by the chancellor and incorporated in the decree, as in the *Bachus* case, it does not merge into the court's award of alimony, and consequently, as we pointed out in that opinion, the wife has a remedy at law on the contract in the event the chancellor has reason not to enforce his decretal award by contempt proceedings.

"The second type of agreement is that by which the parties, without making a contract that is meant to confer upon the wife an independent cause of action, merely agree upon 'the amount the court by its decree should fix as alimony.' * * * A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with the proof upon an issue not in dispute, and by its nature it merges in the divorce decree."

The fact that Dr. Armstrong entered into an im-

provident agreement is not grounds for relief, and we think the provisions of the agreement make clear that it was a separate and independent contract entered into between the parties, and independently enforceable in a court of law. There are nine different matters agreed upon by Doctor and Mrs. Armstrong. In item number "5", Dr. Armstrong agrees to pay Mrs. Armstrong, commencing on the date of the divorce "the sum of $160.00 per week as *alimony for life* (our emphasis) or until she remarries". Still further in the same paragraph, "In addition the defendant agrees to pay the annual real estate taxes on the plaintiff's present home for so long as alimony is due and payable and for so long as she owns the home".

Paragraph "5", we think, clearly shows an independent agreement for it will be noted, that unless she remarries, appellee is due to receive alimony for life. This is not normally a provision that would become merged in a decree. Let us suppose that a clerk who earns $300.00 per month is required to pay his ex-wife $125.00 per month as alimony. Suppose that the ex-wife inherits a quarter of a million dollars from an uncle, but the ex-husband continues at his same position and at the same salary. Very likely, under an alimony order entered by the chancellor, the amount would be drastically reduced,—or completely disallowed. In fact, the provision of alimony for life would be most unusual in a divorce decree, such a decree frequently reciting that an award is made "until further orders of the court". Even where there is no such provision, that meaning is generally accepted.

Paragraph "6", providing for support of the daughter "for so long as she is enrolled in school and not gainfully employed" also indicates an independent agreement, for in a great many instances a chancellor will hold that the father's duty to support normal children ends when they have attained their majority. Under the agreement reached between these parties, the daughter could acquire her A.B. degree, her Master's degree, and her Doctor's degree, perhaps attending

school until thirty years of age, and the father would be legally obligated to pay the cost.

Paragraph "8" recites that Dr. Armstrong is indebted to Mrs. Armstrong for a personal cash loan in the amount of $2,700.00 which he agrees to repay at the rate of $100.00 per month. Certainly, it could not have been contemplated that the court would have the right to relieve appellant of this obligation. These provisions are referred to as a matter of showing that the parties, when entering into their agreement, desired an independent contract that could be enforced in a court of law as well as in chancery.

Without reciting further from the instrument we think the next-to-last paragraph fully resolves the question before us. That paragraph reads as follows:

"This agreement is made with full knowledge on the part of both parties hereto, that the promises, averments, and covenants herein under *are mutually irrevocable*[1] * * *."

Affirmed.

JOHN A. FOGLEMAN, Justice, dissenting. The majority apparently relies upon the following factors to declare the agreement in this case to be an independent contract and not merged into the decree of divorce:

1. Provision for alimony is for life, or until appellee remarries.

2. Appellant agreed to pay taxes on appellee's home as long as alimony was due and as long as she owned the home.

3. Support for a daughter could extend beyond her minority.

---

[1] Our emphasis.

4. Appellant obligated himself to repay a debt arising from a loan made to him by appellee.

5. The promises, averments and covenants are mutually irrevocable.

Facts not mentioned in the majority opinion that seem significant, and which, taken together with the language of the decree and other facts mentioned in that opinion, seem to me to make the conclusion that the agreement was merged in the decree inescapable, include:

1. Appellee filed suit October 28, 1965, and the case was at issue on November 16, 1965.

2. During the pendency of the action appellee made three separate applications to the court for exercise of its contempt powers to enforce its order relating to alimony pendente lite, child support, attorney's fees and suit money.

While pertinent dates appear in the majority opinion, it is also significant that, even though the suit was at issue for two years before the decree of divorce was rendered, the uncontested decree[1] was rendered one day after the date of the agreement in question.

The decision in Bachus v. Bachus, 216 Ark. 802, 227 S. W. 2d 439, is not helpful here. The written contract for settlement of property rights, alimony and child support there was not further identified or categorized. The court obviously treated it as an independent contract not merged into the decree so that it was not subject to modification as to alimony.

I cannot conceive of a situation in which the parties might go to greater lengths to merge an agreement into a decree than they went here. The agreement

---

[1]While the general denial filed by appellant was not withdrawn, no evidence was offered in his behalf. The only witnesses were appellee and her corroborating witness.

is recited in the decree. The caption of the agreement is identical to that which would be given to a pleading filed or decree or order entered in the case, viz:

IN THE CHANCERY COURT OF PULASKI COUNTY, ARKANSAS

MARY NELLE ARMSTRONG                                              PLAINTIFF

VS                              NO. 131247

HOWARD M. ARMSTRONG                                              DEFENDANT

The parties to the agreement are denominated as plaintiff and defendant, respectively. The agreement covers every issue that might have otherwise been litigated if the wife established grounds for divorce, *i. e.*, attorney's fees, costs of suit, property division, alimony, child support, adjustment of tax liabilities and restoration of property. Of course, the issue as to grounds for divorce could not have been eliminated by stipulation. Paragraph five relating to alimony was not binding upon the personal representatives of appellant. Provision was made for payments to continue until appellee's remarriage.

The enforcement of the contract was not left to the discretion of the court, as in cases where contracts are independent and the court may withhold its extraordinary powers leaving the parties to their other remedies. Any contrary idea is clearly negated by the sentence reading "The terms and provisions of said contract may be enforced by the further orders of this court in the same manner and to like effect *as are the judgments and decrees of the court.*" (Emphasis mine.) An intention to merge the agreement into the court's decree with a reliance upon its enforcement powers rather than upon a retained independent cause of action could hardly be more clearly expressed.

When all the pertinent factors are considered, this intention could hardly be more clearly demonstrated. This merger is even more effectively expressed in the

closing words of the decree, wherein the court said:

> The court shall retain jurisdiction of the parties of this cause for the purpose of ascertaining and enforcing the rights of the parties according to the terms of this decree.

Even though the agreement here is written, the situation in this case is much more nearly like *Seaton v. Seaton,* 221 Ark. 778, 255 S. W. 2d 954, than *Bachus.* In *Seaton,* the contention was made that the alimony allowed by a divorce decree could not be modified because the award was based upon a property settlement made by the parties. Even though the language of the decree there was the simple statement "This agreement has been approved by the court and is hereby made a consent decree," it was held that the agreement was not made with the intention of conferring upon the wife a separate cause of action, but merely was an agreement upon the amount the court should fix as alimony and, thus, subject to modification.[2] It is clear that the agreement here was of the type involved in *Seaton* when we consider the statement there that such contract may be intended merely as a means of dispensing with proof upon an issue not in dispute, so that by its nature it merges in the divorce decree. The agreement before us certainly dispensed with a lot of proof and its intention so to do is clearly demonstrated, not only by its form and content, but by the record in the case.

It should also be noted that in *Wilson* v. *Wilson,* 186 Ark. 415, 53 S. W. 2d 990, where the agreement as to alimony was held to be subject to modification, settlement of property rights constituted a part of the

---

[2]The authority relied upon was *Holmes* v. *Holmes,* 186 Ark. 251, 53 S. W. 2d 226. In *McCue* v. *McCue,* 210 Ark. 826, 197 S. W. 2d 938, it was aptly pointed out that the wording of the *Holmes* decree on the critical point was "It will be seen * * * that the agreement of the parties was 'merely one as to the amount the court by its decree should fix as alimony' and was not intended as an independent agreement for the payment of alimony."

agreement. We said that, pursuant to this settlement of property rights, the court decreed that the wife be given the household goods and be paid the sum of $60 per month and that she release and relinquish all her right, title and interest in and to any property of the husband.

Not long ago we held that an order to make weekly payments of alimony was decreed by a chancery court's divorce decree reading, in pertinent part:

It is, therefore, by the Court considered, ordered, adjudged and decreed that * * * the Property and Support Agreement entered into by the parties, which is filed herein, be, and the same is hereby, specifically approved by the Court and is adopted and incorporated herein as a part and parcel of this Decree in settlement of the respective rights, liabilities, and obligations of the parties hereto; * * *

It is so ordered.

See *Thomas* v. *Thomas* (June 2, 1969), 443 S. W. 2d 534. There the agreement was made to settle, compromise and determine the parties' respective rights, duties and obligations with regard to support, property and financial matters. We relied upon *Solomon* v. *Solomon,* 149 Fla. 174, 5 So. 2d 265 (1942). A part of the opinion in that case quoted in *Thomas* reads:

"It seems to be the rule that where such an agreement is merely ratified and not made a part of the final decree, the husband is not responsible in contempt proceedings for default on his part, but if the agreement is embodied in the decree and contemplates when executed that it shall become a part of the court's order, a failure of the husband is punishable by contempt."

The fact that child support is involved in the agreement is not really significant. The power of the court to modify a decree for child support cannot be defeated by an agreement between the parents, even

though the court adopts that agreement. *Lively* v. *Lively*, 222 Ark. 501, 261 S. W. 2d 409; *Collie* v. *Collie*, *242 Ark. 297, 413 S. W. 2d 42, Johnston* v. *Johnston*, 241 Ark. 551, 408 S. W. 2d 885. Furthermore, we have recognized that a divorced parent's obligation to his child is not necessarily limited to the child's minority. *Matthews* v. *Matthews*, 245 Ark. 1, 430 S. W. 2d 864; *Jerry* v. *Jerry*, 235 Ark. 589, 361 S. W. 2d 92. We do not know what circumstances prompted the particular provision as to support and education of this daughter.

The provision for alimony for life should not be a significant factor in determining the question involved here. Alimony is normally to be paid during the joint lives of the parties or until the remarriage of the wife, just as the agreement between the parties provides. *Birnstill* v. *Birnstill*, 218 Ark. 130, 234 S W. 2d 757; *Wear* v. *Boydstone*, 230 Ark. 580, 324 S. W. 2d 337. It was said by this court when the rules to be observed by chancellors in these matters were first fixed that alimony should not be allowed for the life of the wife, but only during the joint lives of the parties. *Kurtz* v. *Kurtz*, 38 Ark. 119. Soon thereafter it was said that alimony continues only during the joint lives of the parties or until the wife remarries. *Brown* v. *Brown*, 38 Ark. 324. After another brief interval it was said that a decree for alimony, where no definite time is fixed during which it is to continue, will cease with the death of either party, or upon relief by the court on the application of the husband after remarriage of the wife. *Casteel* v. *Casteel*, 38 Ark. 477. I find no deviation from these declarations in our later cases.

The clause making the agreement mutually irrevocable also seems insignificant to me. The very words indicate that the parties cannot retract the agreements made in that stipulation. This does not mean that they were binding on the court. *Bachus* v. *Bachus*, 216 Ark. 802, 227 S. W. 2d 439; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700. I do not see how irrevocability of the stipulation by act of the parties could be said to

make the payments the subject of enforcement by independent cause of action, or to limit the court's power of modification.

I cannot see how my position would in anywise hamper parties desiring to enter into an independent settlement contract in contemplation of divorce so that the wife retains an independent cause of action thereon making it enforceable even if the equity court should withhold its extraordinary power. I am disturbed about the reverse of that proposition, in view of the decision here. My question is, how can a husband and wife enter into a valid and binding stipulation resolving all litigable issues in a divorce case, except the one they are theoretically forbidden to resolve, so that enforcement of the decree and its modification to meet changed conditions will be vested in the court in which the cause is pending, eliminating any possible independent cause of action?

Of course, I would reverse the decree.