AIDA T. WHITE v. CARL L. WHITE

No. 7428DC1064

(Filed 19 March 1975)

1. **Divorce and Alimony § 23; Parent and Child § 7— consent judgment — agreement to pay college expenses of child — obligation to support**

     Where, by the terms of a consent judgment, defendant father agreed to pay an amount each week for the support of a child until 11 September 1972 and thereafter to pay $2,000 per year for college expenses for each year the child remained in college for up to four years, and the child attained age 18 on 8 May 1972 and would attain age 21 prior to the completion of four years of college, the father's obligation to provide support for the child by payment of college expenses did not end when the child reached majority at age 18.

2. **Divorce and Alimony § 23; Parent and Child § 7— consent judgment — argeement to support child beyond majority — enforcement by contempt**

     A consent judgment in which the father agreed to provide child support by payment of college expenses after his statutory duty to support ended when the child became 18 years of age could be enforced by contempt proceedings.

APPEAL by plaintiff from *Israel, Judge.* Judgment entered 20 November 1974 in District Court, BUNCOMBE County. Heard in Court of Appeals 21 February 1975.

White v. White

On 30 October 1962, a judgment was entered in a divorce action giving plaintiff custody of the two minor children of plaintiff and defendant and requiring defendant to pay to plaintiff $50 each week for the support and maintenance of the minors. Thereafter, defendant left the State and failed to comply with the terms of the order. In 1963, plaintiff, by invoking the provisions of the Reciprocal Enforcement of Support Act, obtained an order in the State of New York requiring defendant to pay the sum of $10 per week for the support of the two minor children. These payments were made by defendant as required by the order. In addition, from 1965 through 1969, he paid $850 per year to assist with the educational expenses of Tony, the older of the children, and provided an allowance for the two children of $11 per week until Tony became 21 at which time he reduced the allowance to $6 per week and at the end of 1969 stopped that payment.

In July 1970, plaintiff moved the court that defendant be adjudged in contempt of the court for his failure to comply with the orders of the court, that the court determine the arrearage due, and that the court enter an appropriate order requiring defendant to provide for the support of the minor child, Marco White, who was then 15 years of age and residing with plaintiff in Brevard. The defendant was a resident of Charlotte, and plaintiff alleged that his income was in excess of $10,000 per year.

In September 1970 the court entered an order reciting that prior to hearing the parties had reached a compromise agreement and desired the court to enter an order by and with their consent. The order provided that defendant should pay $25 per week for Marco's support until 13 September 1971 at which time the payments would be increased to $35 per week and continue until 11 September 1972, at which time the weekly payments would end. Thereafter, defendant was to pay to the child or to the college he attended the sum of $2,000 annually for educational expenses. Plaintiff was to claim the child as her dependent for State and Federal income tax purposes for the years 1967 through 1971, and thereafter the defendant would be entitled to claim him as a dependent. The order further provided that defendant would be relieved of any obligation to plaintiff for arrearage due her under the original judgment.

In September 1974, plaintiff again moved the court for the entry of an order adjudging defendant in contempt for his fail-

ure to comply with the terms and provisions of the consent order. In support of her motion, plaintiff filed an affidavit in which she stated that defendant had paid only $1500 toward Marco's educational expenses and that he was in arrears the sum of $2500, having paid only $1500 for the 1972-73 college year and nothing for the year 1973-74.

The court entered an order finding facts, among them that plaintiff did not contend that Marco White is physically or mentally incapable of supporting himself, and that Marco White attained age 18 on 8 May 1972. The court concluded as a matter of law, upon the authority of *Shoaf v. Shoaf*, 282 N.C. 287, 192 S.E. 2d 299 (1972), that "[d]efendant's legal obligation to support Marco White or to comply with the Order of September 10, 1970, ended when Marco White attained the age of eighteen years on May 8, 1972, and the Court is without authority to go behind or to inquire into the contentions of the parties or matters and things existing prior to the entry of the Consent Order of September 10, 1970, and should deny the Plaintiff's request to determine the arrearage." The court, thereupon, dismissed plaintiff's application. Plaintiff appealed.

*Riddle and Shackelford, P.A., by Robert E. Riddle, for plaintiff appellant.*

*McGuire, Wood, Erwin & Crow, by William F. Wolcott, III, for defendant appellee.*

MORRIS, Judge.

[1] Plaintiff earnestly contends that the court erred in refusing to enforce the consent order of 10 September 1970, with respect to educational expenses of Marco White. On the other hand, defendant contends that the court properly applied *Shoaf v. Shoaf, supra,* in holding that, as a matter of law, defendant was relieved from any further obligation of support of any kind for his son after his son attained age 18.

The question presented here was not before the Court in *Shoaf*. There the question was, as stated by Justice Higgins: "Since the effective date of G.S. 48A, does a father's legal liability for the support of his son born on January 13, 1953, continue until the son becomes twenty-one years of age, by reason of a consent judgment dated June 11, 1970, providing that '*payments for child support shall continue until such time*

White v. White

*as said minor child reaches his majority or is otherwise emanci-*
*pated?' "* (Emphasis supplied.) At the time the *Shoaf* judgment
was entered, an infant became emancipated at age 21. However,
the 1971 General Assembly made minors adults at age 18 effec-
tive 5 July 1971, by enactment of G.S. 48A-1 providing: "The
common-law definition of minor insofar as it pertains to the
age of the minor is hereby repealed and abrogated.", and G.S.
48A-2 providing that "A minor is any person who has not
reached the age of 18 years." The minor in *Shoaf* reached 18
years of age prior to the effective date of the legislation. Sub-
sequent to the effective date, defendant in *Shoaf* made two pay-
ments and then refused to make any more. Plaintiff in *Shoaf*
obtained an order citing defendant to appear and show cause
why he should not be cited for contempt. The district court
ordered defendant to make payments until the child became 21.
We affirmed, with one dissent, holding that it was obviously
the intent of the parties that the father support his son until
he reached age 21, since it was presumed that both parties knew
that the boy "would reach his majority" at age 21, the age of
majority at the time the consent order was entered. The Supreme
Court, however, held that when parents invoke the jurisdiction
of the court in custody and support of children, the minor be-
comes a ward of the court, and "[t]he court thereafter has
authority to force the parent to discharge the legal obligation
to support a minor child until he reaches legal age", and during
minority changed conditions always justify the court entering
an order changing the obligations of parents with respect to
children. The court held that the clear wording of the judgment
did not require or permit an interpretation that the father in-
tended the support to continue despite any change in the law.
The General Assembly alone has the authority to determine the
age of majority. It did so and made the effective date 5 July
1971, beyond which time the defendant Shoaf had no obligation
to support his son. When the legal duty of support ended at
age 18, the father's obligation under the consent order ended,
the General Assembly having changed the conditions by fixing
a different date upon which liability to support a child termi-
nated. The Shoaf order by its own provisions carried no obliga-
tion to furnish support beyond the date the child reached his
majority. In this situation, the Washington Court (see *Waymire
v. Waymire,* 10 Wash. App. 262) has held that the Legislature
was "without power to set aside, annul, or change the liability
upon a judgment affecting solely the rights of private parties

by the enactment of a general law," and, therefore, the statute changing majority from 21 to 18 could not have retrospective application to a judgment providing for support of minors "until such time as she shall reach age twenty-one years, become self-supporting or married, whichever shall first occur, . . . " *Waymire v. Waymire,* 10 Wash. App. 262, 517 P. 2d 219 (1973), reh. denied 8 February 1974, rev. denied 18 March 1974.

The Florida Legislature in changing the age of majority to 18 specifically provided that it should have only prospective application and should not affect existing rights and obligations. In holding a father subject to contempt for refusing to furnish support beyond age 18 where the consent order provided for support to "majority," the Florida Supreme Court said that to apply the statute retroactively would cause review of innumerable cases, disrupt family budgets, education and other plans. The Court said further: "It is hardly conceivable that husband-petitioner herein could have anticipated the age reduction by the Legislature and intended support only to the reduced age of 18 . . ." *Daugherty v. Daugherty,* 308 So. 24 (Fla. 1975), reh. denied, 5 March 1975.

The order before us is entirely different than the order in *Shoaf* and that in *Waymire* and *Daugherty.* By the terms of the order, to the entry of which defendant consented, defendant was obligated to pay $35 per week for the child's support to 11 September 1972. The child would have attained age 18 on 8 May 1972. The order then provided for the payment of $2,000 per year on college expenses for each year the child remained in school up to four years. Obviously, the child would attain age 21 prior to the completion of four years of college so that the defendant consented to the entry of an order obligating him to furnish educational expense for his son not only beyond the present age of majority but beyond the then age of majority.

[2] That the order is of the type enforceable by contempt is, we think, clear. It fits the pattern prescribed by Justice Sharp, now Chief Justice, in *Bunn v. Bunn,* 262 N.C. 67, 136 S.E. 2d 240 (1964), where "the court adopts the agreement of the parties as its own determination of their respective rights and obligations and orders the husband (father) to pay the specified amounts as alimony (child support)." See also *Shoaf v. Shoaf, supra; Parker v. Parker,* 13 N.C. App. 616, 186 S.E. 2d 607 (1972). However, the question of whether such an order can be enforced by contempt beyond the time of the existence of a

statutory duty of support is a question which has not been answered in this jurisdiction. The precise question was before the Michigan Court in *Ovaitt v. Ovaitt,* 43 Mich. App. 628, 204 N.W. 2d 753 (1972). There the father had agreed to contribute $100 each month for each child for each month that the child was in attendance at an accredited college or university, the support payments to continue so as to provide four years of college for each child. The agreement was incorporated verbatim in a divorce judgment entered on 31 August 1965. The parties agreed that at the time of the entry of the judgment, both knew that the children would be more than 21 years of age by the time they completed four academic years of college. The parties also agreed that in the absence of a specific agreement providing for child support beyond majority, the court was without authority to order post-majority support payments. The Court, in a well-reasoned opinion, concluded that the agreement between the parties providing for post-majority support, which was incorporated into the divorce judgment, served to provide the Court with enforcement power which it would not have in the absence of the agreement. In doing so, the Court said that "the court has jurisdiction to make an order or judgment for support and college expenses for the children of the parties who are minors at the time of entry of such order or judgment. We find no statutory prohibition against continuing such order or judgment provisions for support and other benefits beyond minority. Further, we believe in the present technological age in which we live that it is not unreasonable to extend support to include provisions for a college education for the minor children of the parties even though such requirement would extend beyond the children's minority."

A similar result was reached by the Ohio Court in the earlier case of *Robrock v. Robrock,* 167 Ohio St. 479, 150 N.E. 2d 421 (1958). There the father had agreed to pay all necessary tuition for his children, if either of them should desire to secure a college education, in a college or university mutually agreed upon among the child affected, the father, and the mother. Plaintiff moved that defendant be cited for contempt for failure to pay for tuition for his daughter's attending college, the agreement with respect thereto having been incorporated in and made a part of the judgment granting plaintiff a divorce from defendant. The Court, in reversing the trial court, and holding that the

defendant's failure to pay his daughter's tuition was a basis for the charges in contempt, said:

> "It is entirely possible, perhaps probable, that a wife may be willing to give up, by way of agreement with her husband, much to which she would be entitled in consideration of the husband doing more than he might be required to do for their children. To disregard such agreements when incorporated in a divorce decree, at least so far as the power of the court to enforce them is concerned, would discourage the settlement of differences between husband and wife or reduce such agreements, when made, to cloaks to be put on or shed at will.
>
> A trial court, even though satisfied in every respect as to the fairness of an agreement, in considering the incorporation of that agreement in a divorce decree, should not be required to separate items in the agreement that the court has the present power to enforce from those it does not have the power to enforce and include in the decree only the former. Nor should such court be required to find itself in the position of saying to a wife, 'Now, of course, the obligations you assume, being such as I have the power to impose, will be enforced against you, but this court will not be able to enforce the obligations your husband is here assuming because I do not have the power to impose them.' " *Robrock v. Robrock, supra*, pp. 427-428.

Undoubtedly the equities in the case before us lie with the plaintiff. She should not have to resort to a separate action in contract where her only means of collection would be a judgment upon which execution would probably result in nothing. Certainly the contempt route is more conducive to successful action than a civil judgment which the debtor can disregard with little difficulty and no punishment.

We are in agreement with the reasoning of and the result reached by the Michigan and Ohio Courts and, having already concluded that *Shoaf* has no application to the facts presented here, we hold that the judgment of the trial court must be reversed and the matter remanded for the entry of a judgment in accordance with this opinion.

Reversed and remanded.

Judges BRITT and ARNOLD concur.