SYLVIA G. NICHOLLS *v.* MALCOLM B. NICHOLLS, JR.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 178204

Memorandum filed February 2, 1977

*Rogin, Nassau, Caplan, Lassman & Borden,* for the plaintiff.

*Berman & Bourns,* for the defendant.

RUBINOW, J. On February 20, 1973, the plaintiff and the defendant, in contemplation of a dissolution of their marriage, entered into an agreement. Paragraph eight of that agreement reads as follows: "EDUCATION EXPENSES. The Husband shall pay the undergraduate college education expenses of each child, including tuition, room, board and books. In addition, the Husband shall pay for the Westledge School expenses incurred by his daughter, Elizabeth Ann Nicholls." On the same day, a decree was entered dissolving the marriage of the parties. The decree recited, in part, that the court "adjudged" that "the Defendant shall pay the undergraduate college expenses of each of the children including tuition, room, board, and books and, in addition, the Defendant shall pay for the Westledge School expenses incurred by the child, Elizabeth Ann Nicholls." This provision of the decree will be referred to hereinafter as the education order.

Although the defendant has furnished funds for the education of the child Sarah, the parties have agreed that, only for the purposes of this proceeding, the funds furnished do not constitute complete compliance with the education order. The plaintiff has filed a motion seeking either a judgment of contempt or an order that the defendant comply with the education order. The defendant claims that the court has no power, on a motion of the plaintiff, to enforce the education order. The grounds of the defendant's claim are (a) that the court has no power to compel the defendant to furnish funds for the education of Sarah because she is now more than eighteen, and (b) that even if the court has that power, the proper person to move for compliance with the order is Sarah, not the plaintiff.

The authorities bearing on the first ground of the defendant's claim are not uniform. A thorough review of those authorities appears in an article

by Robert M. Washburn entitled "Post-Majority Support: Oh Dad, Poor Dad," 44 Temp. L.Q. 319, hereinafter referred to as Washburn. The lack of uniformity noted in that article is confirmed by the excellent briefs of both parties, which contain citations to authorities supporting the respective position of each party.

If the court were to sustain the defendant's first ground, the court would have to find that, as a matter of law, the court had no power to enter the education order. There are five considerations that persuade the court that it cannot validly so find. These considerations are:

(1) Unlike the statutes in some states, the Connecticut statutes do not specifically proscribe post-majority support.[1]

(2) Even in states that would normally not enforce a decree for post-majority support, such support has sometimes been decreed where there have been exceptional circumstances. The significance of the cases so holding is that post-majority support decrees are not, as a matter of law, invalid; validity may be established by the facts in a given case.

(3) Decrees related to the furnishing of post-majority education may fall within the scope of the rule that the facts in a given case may warrant a post-majority support decree. The advantage of an education may be considered an exceptional circumstance where the intellectual capacities of the child and the financial ability of the parent are such that the parent can afford to educate a child whose

[1] In New York, where post-majority support was not permitted by statute, the court in *Weber* v. *Weber*, 51 Misc. 2d 1042, 1044, nevertheless, ordered such support to give effect to a foreign decree. See Robert M. Washburn, "Post-Majority Support: Oh Dad, Poor Dad," 44 Temp. L.Q. 319, 321.

best interests would be promoted by the post-majority education. Washburn, p. 335. A question to be considered in determining whether exceptional circumstances exist is whether the child would have received the education if the marriage had not been dissolved. "To terminate support when the parents are divorced creates a special disadvantage not shared by children whose parents remain together. If the father could have been expected to provide advanced education for his child, it is not unfair to expect him to do so after he has been divorced. However, if the father will in some way be disadvantaged by requiring continued support, this harm must be weighed against the advantages to the child. . . . Today, since children remain in school longer, they frequently do not mature or become self-sufficient until later in life." Washburn, p. 329.

(4) Where the decree goes no further than to order the parent to do what he has agreed to do, the court's power to enter the decree may be based on the traditional jurisdiction of equity to enter a decree that a party specifically perform a promise.[2] Where, as in this case, the court is entering a specific performance decree to the entry of which the parent has agreed, the supporting parent should be estopped to claim adequacy of a legal remedy as a defense, even if that defense would be otherwise available.

(5) There is a specific provision in General Statutes § 46-49 (formerly General Statutes § 46-26c) that permits the parties to submit to the court an

---

[2] "As a general proposition of law, courts which lack jurisdiction cannot be clothed with jurisdiction by agreement of the litigants. However, divorce courts have relied on settlement agreements to order post-majority support when they would otherwise have lacked jurisdiction." Robert M. Washburn, "Post-Majority Support: Oh Dad, Poor Dad," 44 Temp. L.Q. 319, 334.

agreement concerning the education of any of their children and authorizes the agreement to be incorporated by reference in the order or decree of the court. Although the education order in this case was specifically set forth in the decree rather than being incorporated by reference, that is of no significance. It would be illogical to hold that what would be valid if incorporated by reference would be invalid if specifically set forth. Significantly, this section of the statute refers to children without the qualifying adjective "minor" found in other sections, e.g., §§ 46-26 and 46-24 (Rev. to 1972).

The foregoing considerations make it patent that there is no unrelenting rule that deprives the court of the power to order post-majority support. Accordingly, the court holds that it has the power to enter post-majority education orders and that the subject education order may be enforced with respect to Sarah even though she is now over the age of eighteen.

The defendant's claim that the plaintiff is not a proper party to enforce the order does not require extended discussion. The plaintiff was a party to the contract that was made the subject of the decree. The court entered an order that the defendant perform one of his undertakings in the contract. In seeking to enforce that order, the plaintiff stands as a party to whom a promise has been made, and she requests now only compliance with the order for the performance of that promise. See *Mills* v. *Mills*, 345 N.E.2d 915, 917 (Mass. App.). Apart from that principle originating in the law of contracts, there is the practical consideration that, if the defendant does not comply with the order, the plaintiff may feel it necessary in the best interests of the child to furnish the funds necessary for Sarah's education.

Accordingly, the education order of February 20, 1973, is confirmed in its entirety, and specifically, without limiting the generality of the foregoing, the defendant is ordered to pay the undergraduate college expenses of the children, including the child Sarah, and including tuition, room, board and books.