808 P.2d 294

**Wilma Cornell SOLOMON and Adrienne Michelle Findley, Plaintiffs/Appellants,**

v.

**Lloyd Talbott FINDLEY, Defendant/Appellee.**

**No. CV–90–0177–PR.**

Supreme Court of Arizona, En Banc.

March 7, 1991.

Carl M. Tootle, Tucson, for plaintiffs/appellants.

Benedict, Hunter & Ward by James D. Hunter, Tucson, for defendant/appellee.

## OPINION

CAMERON, Justice.

### I. JURISDICTION

Defendant, Lloyd Talbott Findley (Findley), petitioned for review of the court of appeals' opinion allowing plaintiffs, Wilma Cornell Solomon and Adrienne Michelle Findley (Solomon), to pursue their claim for post-majority educational support in contract, rather than by enforcement of the dissolution decree. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3), A.R.S. § 12–120.24, and rule 23, Ariz.R.Civ. App.P., 17A A.R.S.

### II. ISSUE

Do the post-minority support provisions of a contract between divorcing parents merge into the decree of dissolution so as to bar a separate claim for breach of contract?

### III. FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 1976, Solomon and Findley filed a joint petition for dissolution of marriage. The petition, which the parties filed *in propria persona*, contained the following provision:

> Husband also agrees to provide educational funds to the best of his ability for said minor child through college or until child reaches age of 25 whichever comes first.

On January 30, 1976, at a hearing with Findley absent, the decree was entered by default. The divorce court approved the agreement, including the educational support provision, and incorporated it into the decree.

Solomon first sought to enforce the decree by filing an order to show cause, alleging failure to provide educational funds to Adrienne, their daughter, as the decree re-

quired. The divorce court denied the relief requested because Adrienne was beyond the age of minority and the court therefore lacked jurisdiction. Solomon then filed a breach of contract action. The trial court granted Findley's motion to dismiss, finding that "the doctrine of merger applied in the judgment and that plaintiffs' claim stemmed from the judgment."

Solomon appealed arguing that there had been no merger because there was no language showing an intent to merge and no finding by the court or order pursuant to statute.[1]

Findley argued that any agreement between the parties was merged into the dissolution decree. He urged that the obligation to perform the agreement ended when Adrienne reached majority because the divorce court, in a dissolution action, lacks jurisdiction to adjudicate the question of liability for child support beyond the age of majority. *See Helber v. Frazelle*, 118 Ariz. 217, 575 P.2d 1243 (1978); *Savage v. Thompson*, 22 Ariz.App. 59, 523 P.2d 110 (1974).

The court of appeals disagreed, noting that because *Helber* had not addressed the validity of that portion of the decree incorporating a matter over which the court had no jurisdiction, the question was open for the court of appeals consideration. The court noted that parties to an action cannot, by consent, confer subject matter jurisdiction on a court that does not otherwise have jurisdiction. *Solomon v. Findley*, 165 Ariz. 45, 46, 796 P.2d 477, 478 (Ct.App. 1990). The court then concluded that the divorce court lacked jurisdiction to provide for educational funds beyond the daughter's minority. Because that portion of the educational support provision was a nullity, it did not merge and plaintiffs could pursue their contract claim. We granted review to revisit our opinion in *Helber*.

## IV. DISCUSSION

The cornerstone opinion that the court of appeals and Findley rely on is *Helber v. Frazelle*, 118 Ariz. 217, 575 P.2d 1243 (1978). In *Helber*, the husband and wife entered into a settlement agreement providing for post-majority support payments. The agreement provided that the husband would continue to make support payments until June 1977, when the daughter would reach 21, and would still be in college. The settlement agreement was approved and incorporated into the dissolution decree. The husband stopped making support payments when the daughter reached 18, and the wife sought enforcement through the decree. The divorce court dismissed the claim because it had no jurisdiction to enforce a support provision once the daughter reached majority. The wife then brought a contract action, which the trial court dismissed, reasoning that the agreement had merged into the decree and could no longer be enforced in an independent action. *Id.* at 218, 575 P.2d at 1244.

This court held that a contractually-based provision for post-majority child support incorporated into a divorce judgment is not enforceable in a supplementary proceeding because the divorce court lacks jurisdiction to enter a judgment for child support after the child has reached majority. In so holding, we overruled *Genda v. Superior Court*, 103 Ariz. 240, 439 P.2d 811 (1968), "insofar as it purports to permit the Superior Court independent of statutory authority to enforce provisions in a divorce decree for payment of support after a child reaches the age of majority." *Helber*, 118 Ariz. at 218, 575 P.2d at 1244. Today we overrule our holding in *Helber*.

Several states have addressed this issue and have reached different solutions. In a leading case from the Tennessee Supreme

1. A.R.S. § 25–317(D) provides:

   If the court finds that the separation agreement is not unfair as to disposition of property maintenance, and that it is reasonable as to support, custody and visitation of children, the separation agreement shall be set forth or incorporated by reference in the decree of dissolution ... and the parties shall be ordered to perform them. If the separation agreement provides that its terms shall not be set forth in the decree, the decree shall identify the separation agreement as incorporated by reference and state that the court has found the terms as to property disposition and maintenance not unfair and the terms as to support, custody and visitation of children reasonable.

Court, a property settlement agreement imposed an obligation upon the husband to pay all future educational expenses of the children beyond the high school level. *Penland v. Penland*, 521 S.W.2d 222, 223 (Tenn.1975). As such, the agreement constituted a contractual obligation outside the scope of the legal duty of support during minority. The Tennessee Supreme Court stated:

> Paragraph 2(c) of the contractual agreement between the Penlands makes no reference, direct or indirect, to age, minority or majority. It imposes an obligation to pay all future educational expenses beyond high school level. Being without any limitation, it necessarily envisioned continuance of the obligation beyond age 21, the age of majority at the time the agreement was entered into.
>
> We hold that paragraph 2(c) is a contractual obligation outside the scope of the legal duty of support during minority, and retained its contractual nature, although incorporated in the final decree of divorce. Mrs. Penland or the daughters are entitled to enforce said obligation by the obtaining of a money judgment, from time to time, as the obligation matures, and for the enforcement thereof by execution as provided by law.

*Penland*, 521 S.W.2d at 224–25.

Similarly, the Arkansas Supreme Court noted that when a husband entered into an improvident agreement, this was not grounds for relief and the agreement could be independently enforceable in a court of law. *Armstrong v. Armstrong*, 248 Ark. 835, 838–40, 454 S.W.2d 660, 663 (1970). In *Armstrong*, the husband agreed to pay alimony to the wife for life or until she remarried, and to provide support for the daughter for so long as she was enrolled in school and not employed. The court could not have ordered these provisions and, therefore, the parties must have made a separate and independently enforceable contract. *Id.*

The Georgia Supreme Court, taking another approach, allowed a wife to enforce a post-majority support agreement by contempt. *McClain v. McClain*, 235 Ga. 659, 662, 221 S.E.2d 561, 563–64 (1975). In *McClain*, a husband agreed to provide child support until each child reached 21, and further agreed to provide a college education for each child. The court found significant differences between a decree rendered under the law and a contract entered into between husband and wife, which is incorporated into a decree. The court stated that "[w]here parties separate and by contract, as here, settle the right of their minor children for support and maintenance and such contract is approved by the trial judge and made part of a final divorce decree, the trial court will enforce the contract as made by them." *Id.* at 661, 221 S.E.2d at 563 (citation omitted).

In *Gaddis v. Gaddis*, 20 Ill.App.3d 267, 314 N.E.2d 627 (1974) an Illinois appeals court took a similar position. The settlement agreement in *Gaddis* provided that the husband would continue child support payments past majority if the children were attending college, and that the husband would be responsible for tuition, books, and board. The court refused to allow the husband to modify the decree, thereby relieving himself of this obligation. The court noted that the husband was not attempting to relieve himself of his support obligation when he entered into the property settlement agreement, but rather that he contracted to do more than the law required. *Id.* at 272–73, 314 N.E.2d at 632. The court noted further that in divorce proceedings the parties often will promise whatever they can in order to obtain a divorce, and then later try to scale down these promises. The court in *Gaddis* stated that "when the parties voluntarily enter into a property settlement whereby each gives consideration for the promises of the other, the resulting contract will be enforced by the trial court." *Id.* The agreement is enforced to provide stability in negotiations between the parties, and to prevent one party from being penalized due to the other party's failure to comply. *Id.*

■ Although respectable authority allows a court to enforce an agreement for post-majority support by way of contempt

**412**

in the divorce court,[2] we believe that the better rule is the contract for post-majority support should be enforced in a separate contract action. We reach this conclusion because the divorce court only has jurisdiction to enforce child support provisions until the child reaches majority. *See* A.R.S. § 25–320 and 327; *Young v. Burkholder*, 142 Ariz. 415, 690 P.2d 134 (Ct.App.1984). Because the divorce court did not have authority to enforce the post-majority educational support provision, that portion of the contract did not merge into the dissolution decree, but rather retained its independent nature enforceable as a contract claim. *Id.* 165 Ariz. at 46–47, 796 P.2d at 478–79.

## V. CONCLUSION

■ A contract for child support may be enforced by the divorce court as long as the child is a minor. In this situation, the contract is merged with the divorce decree and enforced by the divorce court. It does not follow, however, that the divorce court may enforce that portion of the contract requiring support after the child reaches majority. In that situation, the parties are left to a suit in contract.

## VI. DISPOSITION

The court of appeals' decision is approved, and the case is remanded to the

trial court for proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.

**2.** In *McClain,* the court enforced the post-majority support provisions by contempt. Several other states hold that such provisions can be enforced by contempt or as an order under the decree. *See, e.g., Ralls v. Ralls,* 383 So.2d 857 (Ala.Civ.App.1980); *Nicholls v. Nicholls,* 33 Conn.Sup. 210, 371 A.2d 400 (1977); *Norris v. Norris,* 473 A.2d 380 (D.C.1984); *Clark v. Chipman,* 212 Kan. 259, 510 P.2d 1257 (1973); *Pumphrey v. Pumphrey,* 11 Md.App. 287, 273 A.2d 637 (1971); *Kotler v. Spaulding,* 24 Mass.App.Ct. 515, 510 N.E.2d 770 (1987); *Ovaitt v. Ovaitt,* 43 Mich.App. 628, 204 N.W.2d 753 (1972); *In re LaBelle's Trust,* 302 Minn. 98, 223 N.W.2d 400 (1974); *Chrestenson v. Chrestenson,* 180 Mt. 96, 589 P.2d 148 (1979); *White v. White,* 25 N.C. App. 150, 212 S.E.2d 511 (1975), *aff'd* 289 N.C. 592, 223 S.E.2d 377 (1976); *Lund v. Lund,* 96 N.H. 283, 74 A.2d 557 (1950); *Jarvis v. Jarvis,* 99 Misc.2d 79, 415 N.Y.S.2d 557 (1978); *Grant v. Grant,* 60 Ohio App.2d 277, 396 N.E.2d 1037 (1977); *Martin v. Martin,* 511 P.2d 1097 (Okl.

1973); *Stanaland v. Jamison,* 275 S.C. 50, 268 S.E.2d 578 (1980); *Jameson v. Jameson,* 306 N.W.2d 240 (S.D.1981); *Despain v. Despain,* 627 P.2d 526 (Utah 1981); *West v. West,* 131 Vt. 621, 312 A.2d 920 (1973); *Cutshaw v. Cutshaw,* 220 Va. 638, 261 S.E.2d 52 (1979); *Bliwas v. Bliwas,* 47 Wis.2d 635, 178 N.W.2d 35 (1970). The above cases demonstrate that a growing majority of the states will enforce an agreement between a husband and wife even if the agreement provides for support beyond minority. This is true even though their statutes recognize that a parent is not responsible for support of adult children and that the court cannot order them to support an adult child except for extraordinary situations. If, however, the parties make an agreement to go beyond their legal obligations the court rendering the decree will enforce the agreement as made between the parties. Although we decline to follow this approach, we recognize the utility of this reasoning in the growing need for judicial economy.