[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is a post dissolution motion which arises out of a pendente lite order entered on October 2, 1989 for alimony and support. Prior to hearing on that motion, the parties reached an agreement which was orally related to the court. As part of that agreement, the plaintiff agreed to pay the "tuition, travel and special equipment for children, for daughter at Cornell, for son at Williston and daughter at Miss Porter's," which was enumerated as number six in part C of the defendant's financial affidavit.
On July 31, 1990, a hearing was held on that prior order and a stipulation was spread upon the record, without prejudice to either party. In accordance with and under the authority of that stipulation, the parties agreed to borrow $100,000.00, secured by a mortgage on their property, to fund a joint account that would be utilized to pay, inter alia the children's tuition during the pendency of the dissolution, in the event that the plaintiff was unable to obtain a loan from his father to pay these expenses.
On November 2, 1990, the parties entered into a second stipulation dissolving the marriage. The hearing therein was then continued to November 5, 1990. This second stipulation, which contained various agreements as to the children's postmajority educational expenses, subsequently became the decree of dissolution itself. In paragraph thirty-two of the written judgment, the court reserved the following issue on a post lite basis:
Whether the plaintiff and/or the defendant CT Page 1520 (and in what proportions, if payment is not to be borne solely by one party) should pay the balance due on Amanda's fall tuition and Laura's and the parties' son, Richard's, spring tuition. In determining this post lite issue, the Court shall also determine whether tuition shall include not only tuition payments but also room and board (limited to the expense of dormitory room and board), cost of books and other fees that are reasonably expected to be incurred by said Laura and Richard in connection with their spring 1991 semesters in college. Any payment towards these obligations shall be reimbursable from the Starrs Plain support trust (to the extent, if at all, that trust is funded by the Starrs Plain condemnation proceeds) in the same manner that voluntary educational payments by the parties for the fall 1991 and all succeeding semesters may be paid (excluding the spring 1991 cost for Miss Porter's school which shall be borne solely by the plaintiff without reimbursement) until each child has graduated from college.
At a pendente lite hearing, the plaintiff agreed to pay the tuition, travel and special equipment for the children. Thereafter, however, at another pendente lite hearing, the parties further agreed to borrow $100,000.00 to fund a joint account that would be utilized to pay, inter alia, "[a]ll the starred expenses of part C, with the exception of number six and we'll come back to number six in a moment. That's the tuition payments."[1] That same transcript continued at pp. 7-8, inter alia:
 MR. KWESKIN: With respect to the tuition payment, Mr. Fricke agrees to use best efforts to obtain the tuition monies from his father by way of a loan. If he is unsuccessful in obtaining a loan from his father to pay the tuition, then the tuition monies are going to be paid from the —
THE COURT: From the account.
 MR. KWESKIN: From the joint account, that's correct. CT Page 1521
 As part of this agreement, Mr. Fricke has agreed that in the Court's final order, the Court will be empowered and shall order Mr. Fricke to pay the spring tuition at Miss Porter's school for Amanda. The concept here, Your Honor, is this. That Mrs. Fricke doesn't want to send Amanda to boarding school in the fall, if the parties can't afford to send her there in the spring. In that event, she would send her to the public High School So, that Mr. Fricke agrees with that and he is agreeing to pay Miss Porter's in the spring and he is undertaking that obligation as part of the Court's final orders.
Although the parties entered into various pendente lite agreements, the dissolution judgment extinguished all pendente lite orders not ordered to survive. The obvious rationale supporting that rubric has been and continues to be that an order for alimony and support pendente lite is calculated to provide support for a spouse the court determines requires financial assistance, and for any dependent children, until the court makes a final determination of the issues. Fitzgerald v. Fitzgerald,169 Conn. 147, 151; Weinstein v. Weinstein, 18 Conn. App. 622,639-40. Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time. Connolly v. Connolly, 191 Conn. 468, 480. Therefore, the court must look elsewhere to determine the plaintiff's postmajority obligations, if indeed there are any in this respect.
On November 2, 1992 and November 5, 1992, the parties entered into oral stipulations in open court, some of which addressed the issue of postmajority support. After reviewing transcripts of the court proceedings (the relevant portions set forth in the endnote),[2] it seems quite clear that the parties agreed to use the proceeds, if any, from a condemnation proceeding to fund a support trust, which would be used to pay for the undergraduate education of the children. The parties did not agree to be obligated for postmajority support is the contingency, the funding of the support trust did not occur; but instead agreed that "there are no legal obligations to make [educational payments] in accordance with his or her means." In the last analysis, it is most significant that the parties orally agreed that CT Page 1522 whoever makes an educational payment "does so out of love for the children, without expectation of contribution from the other party."
Although the parties entered into various oral agreements, "[i]f the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree. . . ." (Emphasis added.) General Statutes, Sec. 46b-66. "It is now axiomatic that support for a minor child extends to age eighteen years only, and that, absent a written agreement, a court has no jurisdiction to render orders requiring" postmajority support. (Citations omitted.) Arseniadis v. Arseniadis, 2 Conn. App. 239, 243. This court lacks jurisdiction to render orders requiring postmajority support in the absence of an agreement in writing.
The only writing that reflects the oral stipulations is the dissolution judgment which was written and signed by the defendant's attorney, Edward Kweskin, by the judge, by the plaintiff, appearing pro se, and by the plaintiff's attorney, Ellen Wells. However, the judgment does not incorporate a written agreement providing for postmajority support. It does, however, reflect the oral stipulations within the text of the judgment. Nevertheless, in Nicholls v. Nicholls,33 Conn. Sup. 210, 214, the court noted that "[a]lthough the education order in this case was specifically set forth in the decree rather than being incorporated by reference, that is of no significance. It would be illogical to hold that what would be valid if incorporated by reference would be invalid if specifically set forth." This court is satisfied that the judgment which was signed by the parties and contains postmajority agreements between the parties, satisfies the requirement of Sec. 46b-66.
In addition to a writing, Sec. 46b-66 requires an agreement providing for postmajority support. In paragraph seventeen of the judgment, the court ordered that "any private school or college tuition expense which arose out of Judge Vertefeuille's pendente lite order also shall not he forgiven and shall be determined on a post-lite basis as hereafter set forth." In paragraph five of the judgment, "[t]he parties hereto have submitted an oral agreement CT Page 1523 concerning alimony, child support, custody and visitation, and division of property, which the Court has found necessary to amend and to impose its own terms and which, after the Court's own amendment, it finds to be fair and reasonable." Paragraphs twenty-one and twenty-two concern the children's educational expenses. In paragraph twenty-one, the court ordered that "[t]he plaintiff shall pay as and for additional child support all costs associated with Amanda Fricke's spring (1991) semester at Miss Porter's school, and shall hold the defendant harmless from same." Paragraph twenty-two recites that:
 Any proceeds from the Starrs Plain Road condemnation which may he hereafter paid or payable to the plaintiff . . . shall be paid as follows: the first $150,000 will be put in a support trust for the parties' surviving children. Whichever party pays the balance of Amanda's fall 1990 tuition and the spring tuition of Laura and the parties' son, Richard, shall be reimbursed off the top of said $150,000 trust. The trust shall be so administered as to provide, as close as is reasonably possible, an equal opportunity for each of the three children of the plaintiff and the defendant to attend the college of his or her own choice. . . .
It cannot be disputed that the parties made an agreement concerning postmajority support as set forth in the oral stipulations. However, the parties failed to specify how the educational expenses would be paid in the event the support trust was not funded by the condemnation proceeds. As a result, the court cannot now modify the agreement absent a written modification. Hirtle v. Hirtle, 217 Conn. 394, 400.
 General Statutes, Sec. 46b-66 requires agreements for the postmajority support of a child to be written. This requirement also applies to modifications of postmajority support. [Citation omitted.] A written agreement is a jurisdictional prerequisite for a valid modification of a postmajority support agreement. [Citations omitted.] Because there was no written agreement for the modification here, we conclude that the trial court lacked subject matter jurisdiction over the defendant's motion, and CT Page 1524 therefore could not modify the provisions of the parties' dissolution agreement relating to postmajority college tuition.
(Citations omitted.) Mitchell v. Mitchell, 24 Conn. App. 343,345. Therefore, because the parties have not submitted a written modification, the court lacks subject matter jurisdiction to modify any postmajority agreement between the parties.
The judgment contains another agreement which the court must address. There has previously been mention of the fact that the parties agreed that the court was to determine which party would be obligated to pay the 1991 spring tuition for Richard and Laura. The jurisdiction of the Superior Court as it relates to postmajority child support derives solely from Sec. 46b-66. Pursuant to Sec. 46b-66, the court has limited power to accept, incorporate and enforce a written agreement of child support that extends beyond a child's age of majority. "Prior to the enactment of Public Acts 1977, No. 77-488, Sec. 1, amending General Statutes, Sec. 46b-66, the Superior Court lacked the power to enforce postmajority support orders through contempt proceedings, even when the parties had stipulated to such an order."
 Public Acts 1977, No. 77-488, Sec. 1, had the limited purpose of permitting a contract for the support of adult children to be incorporated into a judgment or order of the court, thereby making such orders enforceable through contempt proceedings, rather than requiring that such a contract be enforced through a separate contract action. [Citation omitted.] The act did not grant the trial court the power to fashion or enforce its own orders concerning postmajority child support.
(Citation omitted.) (Emphasis added.) Albrecht v. Albrecht,19 Conn. App. 146, 156-57. However, in the present case, the plaintiff and the defendant agreed that they would bear the cost of Richard's and Laura's 1991 spring tuition. They also agreed that the court would decide which party would bear those costs. Although "[s]ubject matter jurisdiction cannot be waived or conferred by consent;" Demar v. Open Space 
Conservation Commission, 211 Conn. 416, 424; "[t]he power to enforce an agreement involving postmajority child support may CT Page 1525 include the power to determine the amount each party is required to contribute under the terms of the agreement, if the parties' agreement contemplates such a determination by the court." Cattaneo v. Cattaneo, 19 Conn. App. 161, 164. There is little question that the parties' agreement contemplated the court's power to determine the amount each party is required to contribute toward Richard's and Laura's spring tuition. This court has subject matter jurisdiction to decide which party will bear the spring tuition expenses, or in what proportion each party will bear the spring tuition expenses.
Finally, it must be recognized that paragraph thirty-one of the written judgment provides that "[t]he oral agreement of the parties shall merge into the terms of this agreement with exception that those provisions pertaining to post age eighteen obligations of the parties toward their children shall survive the terms of this judgment." (Emphasis added.) The court at the conclusion of the November 5, 1990 hearing stated that "[e]verything that does not relate to the post-eighteen obligations will be merged in the decree. Everything that does, will survive the decree and shall he enforceable contractually on its own." Consequently, the oral agreements pertaining to postmajority obligations survive the dissolution decree, and may be enforceable in a separate contract action, although not enforceable by the court in the present divorce proceeding. "The legislature recognized that although a contract for the support of adult children might be enforceable by instituting a separate action for the enforcement of that contract, such a suit would require a lengthier time for resolution and that the agreement could not be enforced by contempt proceedings." (Emphasis added.) Arseniadis v. Arseniadis, supra, 245. To reiterate, should the parties have a separate cause of action for breach of contract, the stipulations between the parties, as reflected in the court transcript and written judgment, reveal that neither party agreed to be legally obligated for postmajority support.
In accordance with the foregoing, this court denies the defendant's motion to compel (for enforcement).
Moraghan, J.