NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TODD ROSENBAUM, *Petitioner/Appellee,*

*v.*

MARJORIE K. LOVELY, *Respondent/Appellant.*

Nos. 1 CA-CV 23-0407 FC
1 CA-CV 23-0667 FC
(CONSOLIDATED)
FILED 06-25-2024

Appeal from the Superior Court in Maricopa County
No. FN2020-097598
The Honorable Glenn A. Allen, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART**

COUNSEL

The Cavanagh Law Firm, P.A., Phoenix
By Christina S. Hamilton
*Counsel for Respondent/Appellant*

Fromm Smith & Gadow P.C., Phoenix
By Stephen R. Smith, Jennifer G. Gadow, Christopher Torrenzano
*Counsel for Petitioner/Appellee*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**C A M P B E L L**, Judge:

¶1        In this dissolution appeal the appellant spouse challenges the allocation of parent-loan and credit-card debts as community obligations, and the amounts awarded for spousal maintenance and attorney's fees. We affirm the debt allocations for the parent loans and one of the credit cards. We vacate the allocations for the remaining credit-card debts, and we remand for proper valuation and allocation. We affirm the spousal maintenance and attorney's fees awards.

## BACKGROUND

¶2        Todd Rosenbaum (Husband) and Marjorie K. Lovely (Wife) married in 1999. They began living separately in August 2019. Husband filed a dissolution petition and served Wife in December 2020.

¶3        In pretrial filings, Husband identified many sources of community debt, including parent loans (for college education of the parties' adult children) and credit cards. In discussing spousal maintenance — to which he conceded Wife was entitled — Husband asserted he would be responsible for repaying the parent loans. But, according to an email Wife sent shortly before the November 2022 trial, Husband had also taken the position that she should share those debts, stating Husband "the last year ha[s] threatened me about how I was going to have to pay half the kids['] student debt." Wife argued in her pretrial statement that she should bear no responsibility for the parent-loan debts because Husband had changed his position and because he had incurred the debts without her input or agreement.

¶4        At trial, Husband testified that the parent-loan debts were community debts incurred to pay the children's college tuition, that Wife had never before claimed ignorance of the loans, and that Wife was in fact on the loan applications providing her "personal guarantee." An online-account printout showing the loans' balances as of mid-2022 was admitted without objection. Husband sought to admit an undisclosed account

printout showing that Wife was listed as "Endorser" on one of the loans. The court sua sponte inquired into the circumstances of this printout's at-trial disclosure. The court ultimately admitted the printout on the ground that it contradicted Wife's pretrial claim that she had not participated in obtaining the loans.

¶5         Husband also provided evidence about the credit-card debts. He testified that both parties had overspent during the marriage, and he provided bills showing early-2021 balances on credit cards from American Express, Best Buy, Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret. Wife testified that she was not responsible for any of the unpaid charges on the store cards.

¶6         Wife acknowledged in a pretrial filing that Husband had financially supported her without limitation after the parties' separation and for some time after service of the petition for dissolution. In mid-2021, he began paying a set temporary spousal maintenance amount plus some of Wife's expenses. The trial evidence showed that Wife did not hold a paying job or pursue any career training during or after the marriage until the month before trial, when she started a part-time position at a helicopter company. Wife testified that she wanted to become a helicopter mechanic, and she presented evidence that this would require a long training period. Husband conceded that Wife should receive spousal maintenance to "help her get on her feet" and pursue her career, even though he was financially struggling. He argued that $2,000 per month for two years would be an appropriate maintenance award; Wife asked for $10,500 per month for six years.

¶7         After trial, the court entered a decree of dissolution characterizing the parent-loan and credit-card debts as community obligations. The court divided each of the credit-card debts equally and divided the parent-loan debts 70% to Husband and 30% to Wife based on the parties' income disparity and Husband's changed argument. The court awarded Wife spousal maintenance of $2,000 per month for two years. The court also awarded her $12,500 in attorney's fees based on the parties' income disparity.

¶8         Wife unsuccessfully moved for relief under Arizona Rule of Family Law Procedure (ARFLP) 83 and, later, ARFLP 85. She timely appealed from the decree, the fees judgment, and the denial of her post-decree motions.

## DISCUSSION

**¶9**         Wife challenges the debt allocations and the amount of the spousal maintenance and attorney's fees awards. We address her arguments in turn.

### I.       Debts

**¶10**         We review the court's characterization of debts as community or separate de novo, and we review debt divisions for an abuse of discretion. *Brucklier v. Brucklier*, 253 Ariz. 579, 582, ¶ 10 (App. 2022).

### A.  Parent-Loan Debts

**¶11**         Wife argues that she should not be held responsible for the parent-loan debts for several reasons. None of her arguments, however, show error.

**¶12**         Wife first argues that the account printout listing her as "Endorser" on one of the loans should not have been admitted into evidence. She argues it was both inadmissible hearsay and was not timely disclosed. Wife, however, made no objection to the printout's admission at trial. Though the court referenced "the objection" when ruling, its inquiry into the printout's admissibility was entirely sua sponte. Compliance with the evidentiary rules had been invoked under ARFLP 2, so Wife had to timely object to preserve a claim of error. *See* Ariz. R. Evid. 103(a). Because she did not do so, we do not address her hearsay arguments. We review only the court's self-initiated analysis about the printout's late disclosure.

**¶13**         The printout's at-trial disclosure was untimely under ARFLP 49(b). A party prejudiced by an untimely disclosure may seek relief pursuant to ARFLP 65. ARFLP 49(b)(3). ARFLP 65(b)(1) provides that the court may enter sanctions, including evidence preclusion, for an untimely disclosure. ARFLP 65(c) further provides that evidence disclosed less than 30 days before trial may be used only if the evidence could not have been earlier discovered and was disclosed as soon as practicable after its discovery. The superior court has broad discretion in ruling on disclosure issues, and we will not reverse absent a clear abuse of discretion and resulting prejudice. *Johnson v. Provoyeur*, 245 Ariz. 239, 241–42, ¶ 8 (App. 2018).

**¶14**         Husband explained that he obtained the printout in response to Wife's new pretrial-statement claim that she had not been consulted about or involved in obtaining the parent loans. Wife responded that she

had not previously needed to make that claim because Husband had always said he would shoulder the debts.

¶15 The court did not abuse its discretion by admitting the exhibit. Though the printout could have been earlier discovered and disclosed, its perceived relevance did not become apparent until shortly before trial. And Wife was not prejudiced by the printout's late disclosure. The "new" information it contained—that Wife had in fact participated in the loan process—did not resolve whether the loans were community debts. In general, "[e]ither spouse separately may . . . bind the community" and "may contract debts and otherwise act for the benefit of the community." A.R.S. §§ 25-214(C), -215(D). A community obligation is presumed "when either spouse incurs a debt during marriage for the benefit of the marital community," and the presumption can be overcome only by "clear and convincing evidence that the debt is the separate obligation of one spouse." *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 198 (App. 1990). This rule applies even if the spouses are living separately when the debt is incurred. *See Neal v. Neal*, 116 Ariz. 590, 593 (1977). The authority to independently bind the community ceases to exist only upon service of a petition for dissolution, legal separation, or annulment that ultimately results in a decree. *See* A.R.S. § 25-214(C)(3).

¶16 Husband presented uncontroverted evidence that the parent loans were community obligations used to pay for the parties' adult children's college tuition. Wife argues that all but one of the loans were taken out after the parties separated, but she does not dispute that they were taken out before the community ended. Husband could bind the community at that time. *See Neal*, 116 Ariz. at 593; A.R.S. § 25-214(C)(3). And, contrary to Wife's argument, Husband could bind the community to aid the parties' adult children. Wife argues that there can be no community obligation because parents are not statutorily obligated to support their adult children. *See Solomon v. Findley*, 167 Ariz. 409, 412 (1991). But nothing precludes parents from voluntarily supporting their adult children at the community's expense: a debt may be community in nature even if benefitting the community is not its primary purpose and even if the community benefit is not pecuniary. *Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 384, ¶ 10 (App. 2010). Based on Husband's testimony and the properly disclosed loan-balances exhibit alone, the loans presumptively created community debts—and Wife failed to present evidence to rebut that presumption.

¶17 We reject Wife's argument that she was unfairly surprised because Husband had said that he would pay the debts. To be sure,

Husband made such assertions in pretrial statements discussing spousal maintenance. But he always identified the debts as belonging to the community. Moreover, Wife herself documented that Husband had "threatened" her with sharing the debts "the last year" before trial—so she was on notice of his changed position well before the trial. Further, the court expressly accounted for Husband's changed position when assigning him majority responsibility for the repayment of the debts.

¶18 We also reject Wife's argument that the court could not deem the parent-loan debts to be community obligations given its finding that "Wife argued that she was not aware of these loans, but she personally guaranteed them." To be sure, Husband presented insufficient evidence to support his testimony that Wife bound herself or the community by becoming a guarantor on the loans. Guarantees must be written, and to bind the community must be signed by both spouses. A.R.S. §§ 25-214(C)(2), 44-101(2). There was no evidence presented that Wife executed an enforceable guarantee. Accordingly, the court's use of the word "guaranteed" to describe Wife's participation in the loans was inaccurate. But the error had no bearing on the question at hand. The relevant issue was not whether Wife had bound herself or the community on a guarantee, but whether Husband had bound the community on the parent loans. On this point, the court properly found that "[t]he parties took out parent loans" creating "community debts." And the court acted within its discretion to divide those debts 70% to Husband and 30% to Wife. *See Brucklier*, 253 Ariz. at 582, ¶ 10.

¶19 Wife also argues that the court erred by denying her motion for relief from the debt allocation under ARFLP 85. ARFLP 85(b) provides that the court may relieve a party from a judgment based on "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to file a motion under Rule 83(a)(1); [or] (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party." We review the denial of ARFLP 85 relief for abuse of discretion. *Quijada v. Quijada*, 246 Ariz. 217, 220, ¶ 7 (App. 2019).

¶20 Wife argues that the court abused its discretion because it incorrectly found that the arguments raised in her ARFLP 85 motion were the same as those previously raised in her ARFLP 83 motion. We see nothing inaccurate in the court's characterization of the arguments as repetitive. In both motions, Wife argued that the untimely disclosed printout might not be genuine and that she was unfairly surprised by Husband's changed position on the allocation of the parent-loan debt.

Moreover, Wife's ARFLP 85 arguments did not compel the court to grant relief. Wife presented new evidence showing that she was a cosigner on only one of the loans (confirming the untimely disclosed printout's veracity). But, as we have discussed, Husband alone could bind the community. The court did not abuse its discretion by denying Wife post-decree relief.

### B. Credit-Card Debts

**¶21** Wife argues that she should not have been held responsible for any portion of the credit-card debts. Based on the evidence presented, we agree that the superior court erred in characterizing and allocating some of the debts.

### 1. American Express Credit Card

**¶22** The court held that the parties were equally responsible for an American Express credit-card debt of about $18,000. That was the amount owed in January 2021, based on charges incurred by Husband, Wife, and the parties' adult children between December 2, 2020 and January 1, 2021. But the community ended when Wife was served with the dissolution petition on December 9, 2020, and only part of the $18,000 stemmed from charges the spouses made before that date. *See* A.R.S. § 25-213. Accordingly, the court's characterization of the entire balance as community debt was error. *See Allyn*, 167 Ariz. at 198.

**¶23** Husband argues that the error benefitted Wife because it undervalued the community's debt. He points out that, as of December 2, about $25,000 was owed on the card—an obligation presumptively belonging to the community. *See id.* But Husband paid off that balance between December 10 and 31, and that balance formed no part of the $18,000 debt. Though Husband did not specify whether he used community or separate funds to pay off the $25,000 balance, he never sought reimbursement from the community. We therefore are not persuaded by his argument of harmless error.

**¶24** We vacate the orders allocating the American Express debt. We remand for the community share of that debt to be properly valued and allocated based on the evidence.

### 2. Best Buy, Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret Credit Cards

¶25 We next address Wife's argument that the court erred by characterizing other credit-card debts as community obligations and dividing them equally. Specifically, she challenges the balances owed on credit cards from Best Buy, Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret.

¶26 As for the Best Buy debt, the bill that Husband provided postdated the community's end but provided an itemized recitation of the charges that showed the debt was incurred during the community's existence. Wife presented no contrary evidence, so the court did not err by characterizing the debt as community debt and dividing it equally. *See Allyn*, 167 Ariz. at 198.

¶27 As for the Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret debts, however, the early-2021 bills that Husband provided set forth balances due but did not specify when the underlying charges were incurred. Without evidence showing that these debts predated the community's end, the court erred by concluding that the community was liable. *See id.* Accordingly, we vacate the orders allocating the Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret debts. We remand for further proceedings so that the superior court may consider relevant evidence to determine the extent of the community's liability for those debts and allocate the debts accordingly.

## II. Spousal Maintenance

¶28 Wife next challenges the amount of the spousal maintenance award. Spousal maintenance is governed by a two-step framework under A.R.S. § 25-319. *Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). Once the court deems a party eligible for spousal maintenance under A.R.S. § 25-319(A), the court must determine the appropriate amount and duration of the award by balancing applicable factors under A.R.S. § 25-319(B). *Rainwater*, 177 Ariz. at 502. The court may award spousal maintenance "only for a period of time and in an amount necessary to enable the receiving spouse to become self-sufficient." A.R.S. § 25-319(B). We review a spousal maintenance award for an abuse of discretion, viewing the evidence in the light most favorable to upholding the award and affirming if reasonable evidence supports the award. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶29 Husband conceded that Wife was eligible for spousal maintenance under A.R.S. § 25-319(A), but he disagreed with her about the proper amount and duration of maintenance under A.R.S. § 25-319(B). The court made extensive findings on applicable factors under A.R.S. § 25-319(B). Evidence showed that the parties had been married for many years ((B)(2)), and enjoyed a high standard of living during the marriage but did so because both engaged in excessive spending ((B)(1) and (11)). Evidence also showed that Wife's role as a stay-at-home parent during the marriage had given Husband the ability to further his career at the expense of Wife's opportunities ((B)(6) and (7)), and that though both parties were burdened by debt, Husband could work and was willing to pay maintenance ((B)(9), (8), (3), and (4)). Evidence showed that Wife had the ability to obtain employment and become self-sufficient ((B)(3), (5), and (10)). But she had failed to take meaningful steps toward doing so despite Husband's continued financial support during the parties' separation and the dissolution proceedings.

¶30 On this record, when the court made proper findings and balanced applicable factors, Wife has shown no abuse of discretion in the spousal maintenance award entitling her to $2,000 per month for two years.

## III.    Attorney's Fees

¶31 Wife finally challenges the amount of the attorney's fees award. Under A.R.S. § 25-324(A), the court may award reasonable attorney's fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." We review an attorney's fees award for an abuse of discretion. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004).

¶32 The court found that Wife was entitled to fees "based on disparity of income, as both sides engaged in unreasonable conduct, yet neither party was more egregious than the other." Wife later applied for more than $97,000 in fees. The court awarded her $12,500. Wife argues that this was error because Husband is substantially better off than she is financially. Wife's own expert, however, was unable to "find a missing pot of gold" when he reviewed Husband's financial information. Evidence showed that Husband had significant personal debt, that the separate-property family business he had relied on to fund his living for 29 years had closed, and that his longstanding attempts to generate additional income as a serial entrepreneur had failed. Evidence also showed that Husband had paid some money toward Wife's fees and that her boyfriend

had loaned her more money for fees with no repayment plan. On this record, we find no abuse of discretion in the attorney's fees award.

## CONCLUSION

**¶33** For the reasons set forth above, we affirm the decree, the attorney's fees judgment, and the post-decree rulings, except we vacate the orders regarding the American Express, Neiman Marcus, Nordstrom, Living Spaces, and Victoria's Secret credit-card debts and remand for further proceedings to allow the court to properly characterize the debts as separate or community and, if community, allocate the outstanding obligations between the parties. We deny the parties' competing requests for attorney's fees and costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:     TM